**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| PETER OLNEY, on behalf of himself and all others similarly situated,<br><br>Plaintiff(s),<br><br>v.<br><br>JOB.COM, INC., and DOES 1 through 10, inclusive, and each of them,<br><br>Defendant(s) and Third Party Plaintiff,<br><br><br>RESUMEDIRECTOR.COM, NORTH AMERICA LIVE CAREER, INC., LIVECAREER, LTD.,<br><br>Third Party Defendants. | CASE NO. 1:12-CV-01724-LJO-SKO<br><br>**MEMORANDUM DECISION AND ORDER DENYING THIRD PARTY DEFENDANTS' MOTION TO DENY CLASS CERTIFICATION AND STRIKE CLASS ALLEGATIONS (Doc. 50).** |

# I. INTRODUCTION

Plaintiff Peter Olney ("Plaintiff") filed this lawsuit against Defendant Job.Com ("Job.com" or "Defendant") on October 19, 2012, complaining that Job.com used an "automatic telephone dialing system" ("ATDS") to call Plaintiff's cellular telephone in an effort to sell or solicit its services without Plaintiff's "prior express consent," in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq*. Doc. 1. Plaintiff also proposed to prosecute the action on behalf of himself and all others similarly situated as a member of a proposed class. *Id*. at ¶ 15-25.

On March 22, 2013, Job.com filed a Third Party Complaint ("TPC") against Resume Director.Com, North America LiveCareer, Inc., and LiveCareer, Ltd. (collectively, "Third Party Defendants"), providers/operators of websites that purport to connect job seekers with recruiters and employers by posting job seeker's resumes on various job websites. Doc. 24, TPC, at ¶¶ 4-5. In providing these services, Third Party Defendants use computer programs to register their clients on various job websites, thereby saving the clients the time required to register on each individual job website. *Id*. at ¶ 14. The TPC alleges that Third Party Defendants, acting as Plaintiff's agent(s), provided Job.com with Plaintiff's cellular telephone number (designating it as Plaintiff's "home phone") during

the process of registering Plaintiff on Job.com's website. *See id*. at ¶¶ 12-14. The TPC further alleges that Job.com's website contains an "opt-out capability, whereby registrants can opt-out of receiving telephone communications from Job.com or others…." *Id*. at ¶ 17. While registering Plaintiff on Job.com, Third Party Defendants failed to opt out Plaintiff from receiving telephone communications from Job.com or others. *Id*. at ¶ 18. Plaintiff did not oppose the filing of the TPC, Doc. 21, and has not asserted any claims against the Third Party Defendants.

Before the Court for decision is Third Party Defendants' "Motion to Deny Class Certification and Strike Class Allegations." Doc. 50. In this motion, Third Party Defendants argue: (1) Plaintiff lacks statutory standing to represent the proposed class because he retained Third Party Defendants to post his resume on various sites, including Job.com, thereby consenting to Job.com's calls; (2) the class as proposed in the Complaint is an impermissible "fail-safe class" that cannot be certified; and (3) individual issues of consent preclude findings of typicality, commonality, adequacy, or predominance. *See generally id.*[1] Third Party Defendants correctly frame the latter two arguments as part of a motion to strike the class allegations pursuant to Federal Rule of Civil Procedure 12(f). As explained in greater detail below, however, the argument that Plaintiff lacks statutory standing must be evaluated as a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

Third Party Defendants present extrinsic evidence along with their motion. Doc. 51 at 2. Plaintiff filed an opposition, along with objections to the extrinsic evidence. Docs. 55 & 56. Third Party Defendants filed a reply, along with additional extrinsic evidence. Docs. 58 & 59. In response to Plaintiff's objection that the reply arguably raised new arguments, Doc. 60, Plaintiff was permitted to and did file a sur-reply, Docs. 61 & 63. The Court has also reviewed Plaintiff's notice of recent authority. Doc. 62. The matter has been submitted for decision on the papers pursuant to Local Rule 230(g). Doc. 61.

---

[1] A third party defendant may assert any defenses against a plaintiff that the primary defendant may raise. Rule 14(a)(2)(C) (permitting a third party defendant to assert against the plaintiff any defenses that the third party plaintiff may have against the plaintiff's claims).

2

## II. <u>STANDARDS OF DECISION</u>

**A.    <u>Motion to Dismiss for Failure to State a Claim.</u>**

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is a challenge to the sufficiency of the allegations set forth in the complaint. A 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990). In considering a motion to dismiss for failure to state a claim, the court generally accepts as true the allegations in the complaint, construes the pleading in the light most favorable to the party opposing the motion, and resolves all doubts in the pleader's favor. *Lazy Y. Ranch LTD v. Behrens,* 546 F.3d 580, 588 (9th Cir. 2008).

To survive a 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility for entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). Thus, "bare assertions ... amount[ing] to nothing more than a 'formulaic recitation of the elements'… are not entitled to be assumed true." *Iqbal*, 556 U.S. at 681. A court should "dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Marketing Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998). In practice, "a complaint ... must

3

contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562. To the extent that the pleadings can be cured by the allegation of additional facts, the plaintiff should be afforded leave to amend. *Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990) (citations omitted).

**B.**   **Motion to Strike Class Allegations.**

Federal Rule of Civil Procedure 12(f) permits the Court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "Redundant allegations are those that are needlessly repetitive or wholly foreign to the issues involved in the action." *Cal. Dept. of Toxic Substances Control v. Alco Pacific, Inc.,* 217 F. Supp. 2d 1028, 1033 (C.D. Cal. 2002) (internal quotation marks and citations omitted). Immaterial matter is "that which has no essential or important relationship to the claim for relief or the defenses being pleaded." *Fantasy, Inc. v. Fogerty,* 984 F.2d 1524, 1527 (9th Cir. 1993) (internal quotation marks and citations omitted), rev'd on other grounds, 510 U.S. 517 (1994). Impertinent matter "consists of statements that do not pertain, and are not necessary, to the issues in question." *Id.* Scandalous matter is that which "improperly casts a derogatory light on someone, most typically on a party to the action." *Germaine Music v. Universal Songs of Polygram,* 275 F. Supp. 2d 1288, 1300 (D. Nev. 2003) (internal quotation marks and citations omitted).

The function of a Rule 12(f) motion is "to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Whittlestone, Inc. v. Handi–Craft Co.,* 618 F.3d 970, 973 (9th Cir. 2010). "Motions to strike are generally regarded with disfavor because of the limited importance of pleading in federal practice, and because they are often used as a delaying tactic." *Alco Pacific,* 217 F. Supp. 2d at 1033; *see also Neveu v City of Fresno,* 392 F. Supp. 2d 1159, 1170 (E.D. Cal. 2005) (Motions to strike are generally disfavored and "should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation."). "Given their disfavored status, courts often require a showing of prejudice by

the moving party before granting the requested relief." *Alco Pacific,* 217 F. Supp. 2d at 1033 (internal quotation marks and citations omitted). "The possibility that issues will be unnecessarily complicated or that superfluous pleadings will cause the trier of fact to draw 'unwarranted' inferences at trial is the type of prejudice that is sufficient to support the granting of a motion to strike." *Id.* (citing *Fogerty,* 984 F.2d at 1528).

Regarding class certification, the Supreme Court has observed that "[s]ometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim, and sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question." *Gen. Tel. Co. of Sw. v. Falcon,* 457 U.S. 147, 160 (1982). Where the complaint demonstrates that a class action cannot be maintained on the facts alleged, courts have granted motions to strike class allegations. *See Sanders v. Apple Inc.,* 672 F. Supp. 2d 978, 990–91 (N.D. Cal. 2009) (granting motion to strike with leave to amend to define a narrower class); *Hovsepian v. Apple, Inc.,* 2009 WL 5069144, *6 (N.D. Cal. 2009)(same). However, motions to strike class allegations are disfavored because a motion for class certification is a more appropriate vehicle for arguments pertaining to class allegations. *Thorpe v. Abbott Labs., Inc.,* 534 F. Supp. 2d 1120, 1125 (N.D. Cal. 2008); *Kazemi v. Payless Shoesource Inc.,* 2010 WL 963225, *2 (N.D. Cal. 2010).

Rule 23(c) (1)(A) provides that the court must determine whether to certify a class action "[a]t an early practicable time." The court may consider the issue on a defendant's motion to deny certification as well as on a plaintiff's motion seeking certification. *Vinole v. Countrywide Home Loans, Inc.,* 571 F.3d 935, 939–40 (9th Cir. 2009). "District courts have broad discretion to control the class certification process," including whether or not to allow discovery. *Id.* at 942. The Ninth Circuit has stated that "[a]lthough a party seeking class certification is not always entitled to discovery on the class certification issue, ... the propriety of a class action cannot be determined in some cases without discovery, and ... the better and more advisable practice for a District Court to follow is to afford the litigants an opportunity to present evidence as to whether a class action was maintainable." *Id.* (internal

quotations and citations omitted). However, "the plaintiff bears the burden of advancing a prima facie

showing that the class action requirements of Fed. R. Civ. P. 23 are satisfied or that discovery is likely to

produce substantiation of the class allegations. Absent such a showing, a trial court's refusal to allow

class discovery is not an abuse of discretion." *Mantolete v. Bolger,* 767 F.2d 1416, 1424 (9th Cir. 1985).

## III. DISCUSSION

### A.    Treatment of Third Party Defendants' Standing Arguments.

Third Party Defendants argue that Plaintiff does not have standing to pursue his TCPA claim

because: (1) Plaintiff voluntarily provided his cell phone number to LiveCareer's Resume-Now.com

website; (2) Plaintiff explicitly authorized LiveCareer to register him on Job.com and other websites;

(3) LiveCareer thereby became Plaintiff's agent and was able to consent to Job.com's calls to Plaintiff

on Plaintiff's behalf. Doc. 50 at 9. Third Party Defendants' opening brief appears to assert that this

argument should be treated as part of its Federal Rule of Civil Procedure 12(f) motion to strike. This

makes no sense. Rule 12(f) permits the Court to "strike from a pleading an insufficient defense or any

redundant, immaterial, impertinent, or scandalous matter." A request to find that Plaintiff does not have

standing does not fall within the scope of Rule 12(f).

Third Party Defendants further confuse the matter by mentioning the term "Article III standing"

in their opening brief. Doc. 50 at 12. Yet, the actual arguments they raise have nothing to do with Article

III standing. Rather, they challenge whether Plaintiff meets the statutory requirements to maintain a

TCPA claim. The distinction makes a difference. Article III standing is a jurisdictional requirement.

Therefore, any challenge to Article III standing would be governed by Federal Rule of Civil Procedure

12(b)(1). *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011). In contrast, an argument that a

party lacks statutory standing requires analysis under Rule 12(b)(6) for failure to state a claim. *Id.*

Because the Court has a *sua sponte* duty to evaluate Article III standing in every case, *Grupo

Dataflux v. Atlas Global Group,* 541 U.S. 567, 593 (2004) ("It is the obligation of both district court and

counsel to be alert to jurisdictional requirements."), the elements of Article III standing will be briefly

addressed. Then, Third Party Defendants' statutory standing will be evaluated under the Rule 12(b)(6)

standard.

**B.**   **Article III Standing.**

To maintain an action in federal court, Plaintiffs must have Article III standing. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 872 (1990). "[T]o satisfy Article III's standing requirements, a plaintiff must show (1) [he] has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000). The burden of establishing the elements of standing falls upon the party asserting federal jurisdiction. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). "[E]ach element of Article III standing 'must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation.' " *Bennett v. Spear*, 520 U.S. 154, 167 (1997) (quoting *Lujan*, 504 U.S. at 561). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice." *Defenders of Wildlife*, 504 U.S. at 560.

**1.**   **Injury in Fact.**

To satisfy the "injury in fact" requirement, Plaintiffs must provide evidence of either actual or threatened injury. *See United States v. Ensig* n, 491 F.3d 1109, 1116–17 (9th Cir. 2007). If the alleged conduct is prohibited by the TCPA, Plaintiff has pled injury-in-fact for standing purposes, even in the absence of any economic harm. *See Smith v. Microsoft Corp.*, 2012 WL 2975712, *3, *7 (S.D. Cal. July 20, 2012) (citing *Edwards v. First Am. Corp.*, 610 F.3d 514 (9th Cir. 2010) (analyzing standing under the Real Estate Settlement Procedures Act). Here, Plaintiff has alleged that Defendants placed multiple calls to him using an ATDS for improper purposes without Plaintiff's prior express consent. Plaintiff has demonstrated injury in fact.

//

//

**2.      Causation.**

Causation requires that the injury be "fairly traceable" to the challenged action of the defendant, and not be "the result of the independent action of some third party not before the court." *Tyler v. Cuomo,* 236 F.3d 1124, 1132 (9th Cir. 2000). The causation element is lacking where an "injury caused by a third party is too tenuously connected to the acts of the defendant." *Citizens for Better Forestry v. U.S. Dept. of Agric.,* 341 F.3d 961, 975 (9th Cir. 2003). Here, Defendant's calls to Plaintiff were the cause of Plaintiff's harm, namely invasion of privacy protected by the TCPA.

**3.      Redressibility.**

Finally, redressibility requires that plaintiff show it is "likely that a favorable court decision will redress the injury to the plaintiff." *Lujan,* 504 U.S. at 560. "Redressibility requires an analysis of whether the court has the power to right or to prevent the claimed injury." *Gonzales v. Gorsuch,* 688 F.2d 1263, 1267 (9th Cir. 1982). Plaintiff seeks fixed statutory damages as well as injunctive relief prohibiting further calls. Such relief would redress his injury.

Plaintiff satisfies the requirements for Article III standing at the pleading stage.

**C.      Motion to Dismiss for Lack of Statutory Standing.**

Third Party Defendants argue that Plaintiff does not have standing to pursue his TCPA claim because: (1) Plaintiff voluntarily provided his cell phone number to LiveCareer's Resume-Now.com website; (2) Plaintiff explicitly authorized LiveCareer to register him on Job.com and other websites; (3) LiveCareer thereby became Plaintiff's agent and was able to consent to Job.com's calls to Plaintiff on Plaintiff's behalf. These arguments are based entirely on extrinsic evidence to which Plaintiff objects.

**1.      Evidentiary Objections.**

**a.      Extrinsic Evidence Related to Plaintiff's Consent.**

Third Party Defendants present extensive extrinsic evidence in support of their argument that Plaintiff does not have standing under the TCPA, including the declaration of James F. Freundlich, LiveCareer Inc.'s Co-Chief Executive Officer, who describes the Resume-Now.com service, how Plaintiff created an account for himself on that service and consented to LiveCareer posting his resume

8

1   on numerous job boards, and how Plaintiff offered his cell phone number during that process, Doc. 51 at

2   ¶¶ 2-12. Freundlich also explains how Plaintiff consented to Live Career's Terms of Use and Privacy

3   Policy, including terms that warned users against uploading information they wished to remain

4   confidential and that LiveCareer was not responsible for maintaining the privacy of information a user

5   chose to share. *Id.* at ¶¶ 13-15. In addition, in Reply, Third Party Defendant presented evidence obtained

6   during discovery, including copies of the statement for the cellular telephone that received the phone

7   calls at issue in this lawsuit. *See* Doc. 59.

8           None of this evidence will be considered at this stage of the litigation. It is well established that a

9   Court may not consider extrinsic evidence in the context of a Rule 12(b)(6) motion to dismiss without

10   converting that motion to a motion for summary judgment.[2] "[W]hen the legal sufficiency of a

11   complaint's allegations is tested by a motion under Rule 12(b)(6), review is limited to the complaint."

12   *Lee v. City of Los Angeles,* 250 F.3d 668, 688 (9th Cir. 2001) (quotation omitted). As a general rule, a

13   district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion.

14   *Id.* Rule 12(d) expressly provides that when:

15           matters outside the pleadings are presented to and not excluded by the court, the motion
16           must be treated as one for summary judgment under Rule 56. All parties must be given a
            reasonable opportunity to present all the material that is pertinent to the motion.

17   Fed. R. Civ. P. 12(d). There are two exceptions to the requirement that consideration of extrinsic

18   evidence converts a 12(b)(6) motion to a summary judgment motion. *Lee,* 250 F.3d at 688. First, a court

19   may consider material which is properly submitted as part of the complaint. *Id.* If the documents are not

20   physically attached to the complaint, they may be considered if the documents' authenticity is not

21   contested and the plaintiff's complaint necessarily relies on them. *Id.* Second, a court may take judicial

22   notice of "matters of public record" pursuant to Federal Rule of Evidence 201. *Id.* The extrinsic

23   evidence offered by Third Party Defendants falls into neither of these exceptions.

24   _____

25   [2] A court may consider extrinsic evidence in the context of a 12(b)(1) motion, which governs any challenge to Article II
    standing. *Warren v. Fox Family Worldwide, Inc.,* 328 F.3d 1136, 1139, 1141 n.5 (9th Cir. 2003). However, Third Party
26   Defendants have not actually challenged any of the elements of Article III standing, nor does any of the extrinsic evidence
    they offer have any relevance to Article III standing.

In Reply, Third Party Defendants request conversion of the motion to one for summary judgment and argue that there is no reason to delay adjudication of this issue because, according to Third Party Defendants, Plaintiff has not identified any relevant discovery needed to oppose this motion. Doc. 58 at 5, 8. But, Plaintiff had no clear call to do so in its opposition because Third Party Defendants mentioned neither Rule 12(b)(6) nor the possibility of converting this motion to one for summary judgment on the standing issue. If a court chooses to convert a 12(b)(6) motion to one for summary judgment, the opposing party would then have the opportunity to respond to the motion. *See* Fed. R. Civ. P. 12(d). In such a case "all parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* The opposing party may then request a stay of the motion for summary judgment to pursue relevant discovery. *See generally* Fed. R. Civ. P. 56(f); *In re W. States Wholesale Natural Gas Antitrust Litig.*, 633 F. Supp. 2d 1151, 1157-58, 1169-70 (D. Nev. 2007). Plaintiff cannot be faulted for failing to delineate specifically discovery required to respond to a Rule 56 motion he does not yet face.

Third Party Defendants further assert that Plaintiff would be unable to identify any discovery that could help his case because Plaintiff's own discovery production admits and confirms what Third Party Defendants demonstrated in the Freundlich Declaration. Doc. 58 at 8. Plaintiff admitted that he used LiveCareer's job website on or about August 13, 2012 and his bank statements reflect that Plaintiff paid for LiveCareer's services starting around that date and continuing through October 2012. Shaffer Decl., Doc. 59, Exs. B & C.

Third Party Defendants cite numerous cases for the proposition that provision of one's cell phone number constitutes consent under the TCPA.[3] Several of these cases concern confirmatory text messages and are therefore not directly analogous. For example, in *Emanuel v. Los Angeles Lakers, Inc.,* 2013 WL 1719035 (C.D. Cal. Apr. 18, 2013), the plaintiff voluntarily sent defendant a text message, to which defendant sent a confirmatory response containing information relevant to the plaintiff's original text. *Id.* at *1. This was found to amount to "express consent" in light of the "overwhelming weight of social

---

[3] It appears that Plaintiff is disputing whether he even completed the process of submitting his resume to Third Party Defendants. *See* Doc. 58 at 8. It is unclear whether this amounts to a denial by Plaintiff that he provided his cell phone number to Third Party Defendants in the first place.

practice: that is, distributing one's telephone number is an invitation to be called." *Id*. at *3. Likewise, in *Ibey v. Taco Bell Corp.,* 2012 WL 2401972 (S.D. Cal. June 18, 2012), the plaintiff sent a voluntary text regarding a survey, which was followed by a text message providing instructions about how to complete the survey. *Id*. at *1. Plaintiff then changed his mind about participating and sent a text to defendant indicating he wanted to "STOP" participating. *Id*. This was followed by a single confirmatory text from defendant. *Id*. The *Ibey* Court also found that plaintiff's initial text constituted "express consent" to be contacted by defendant. *Id*. at *3. *See also Ryabyshchuck v. Citibank (S. Dakota) N.A*., 2012 WL 5379143 (S.D. Cal. Oct. 30, 2012) (finding no TCPA violation where defendant sent confirmatory text message). These cases bear almost no relation to the facts of the present case, where it is alleged that Plaintiff never directly communicated with Job.com in a manner that would expressly indicate consent to be called.

     *Pinkard v. Wal-Mart Stores, Inc*., 2012 WL 5511039 (N.D. Ala. Nov. 9, 2012), is somewhat more analogous. There, plaintiff provided her cell phone number to Wal-Mart pharmacy personnel, who indicated it was needed "in case there were any questions that came up." *Id*. at *2. Within hours of leaving her prescription at the pharmacy, plaintiff began to receive numerous text messages at her cellular phone from Wal-Mart. *Id*. Plaintiff alleged that it was Wal-Mart's practice to send unsolicited text messages to consumers' cellular telephones using ATDSs after obtaining their personal information. *Id*. The *Pinkard* court concluded that plaintiff expressly consented to receive the text messages by giving her cell phone number to the pharmacy staff:

> [P]roviding her cellular telephone number to defendant was "clear and unmistakable" consent to be contacted at that number. To hold otherwise would contradict the overwhelming weight of social practice: that is, distributing one's telephone number is an invitation to be called, especially when the number is given at another's request.

*Id*. at *5. *See also Roberts v. PayPal, Inc*., 2013 WL 2384242, *4 (N.D. Cal. May 30, 2013) (following *Pinkard* to hold that plaintiff's provision of cell phone number to defendant constituted consent to receive information about defendant's mobile services).

In reaching this holding, *Pinkard* and *Roberts* applied a standard set forth in *Satterfield v. Simon & Schuster, Inc.,* 569 F.3d 946 (9th Cir. 2009). There, the plaintiff joined a service, Nextones.com ("Nextones"), in order to receive a free ringtone. *Id.* at 949. She provided her phone number to Nextones along with other information, and consented to Nextones' terms and conditions. *Id.* Subsequently, she received a text message from Simon & Schuster advertising the publication of a new book. *Id.* Plaintiff sued Simon & Schuster for violations of the TCPA. The district court granted defendant's motion for summary judgment, holding, among other things, that plaintiff consented to receiving the text message. *Id.* at 950. The Ninth Circuit reversed, reasoning that the TCPA requires prior <u>express</u> consent, which the Ninth Circuit has defined as "[c]onsent that is clearly and unmistakably stated." *Id.* at 955 (quoting Black's Law Dictionary 323 (8th ed. 2004)). While the plaintiff had consented to receiving communications from Nextones and its affiliates, she had not consented to receive communications from Simon & Schuster, which had no formal relationship with Nextones. *Id.*

The present circumstances are at least arguably more analogous to those in *Satterfield* than those in *Pinkard*. Even if Plaintiff consented to calls from Third Party Defendants, was that sufficient to consent to calls from other job hunting websites to whom Third Party Defendants provided Plaintiff's telephone number? The Court need not definitively resolve this issue here, as the present question is whether it would be possible for Plaintiff to discover information that would permit his claim to proceed (i.e. that would support his position that he did not consent to calls from Job.com). Whether consent was given is not a straightforward inquiry. It will require a complete record and a thorough examination of the growing body of related caselaw. Accordingly, the Court declines to consider Plaintiff's extra record evidence at this time.[4] At this early stage in the litigation, there is no reason for the Court to adjudicate a

---

[4] Third Party Defendants argue in Reply that extrinsic evidence can be considered in the context of a motion to deny class certification. In support of this assertion, Third Party Defendants cite cases decided at the class certification or decertification stage, much later in the litigation process. For example, in *Marlo v. United Parcel Service, Inc.*, 639 F.3d 942, 948-49 (9th Cir. 2011), the parties had already taken depositions and gone through a round of summary judgment motions before the district court, on remand, decertified the class based upon consideration of declarations, deposition testimony, and other extrinsic evidence. Neither *Marlo* nor any of the other cases cited by Third Party Defendants are analogous to the present situation, where Third Party Defendants have brought a motion to strike class allegations. On a motion to strike, as with a motion to dismiss, the Court cannot consider extrinsic evidence. *Wailua Assocs. v. Aetna Cas. & Sur. Co.*, 183 F.R.D. 550,

summary judgment motion. Plaintiff has not yet had an opportunity to discover "all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). Accordingly, because Third Party Defendants' statutory standing challenge hinges on the consideration of this evidence, this aspect of Third Party Defendants' motion is DENIED WITHOUT PREJUDICE.

### b.  Extrinsic Evidence Relating to Plaintiff's Ownership of the Called Cellular Telephone Number.

In their Reply, Third Party Defendants argue that Plaintiff's own AT&T Wireless Statement shows that the telephone number at issue in this case is registered to Plaintiff's wife, Jamey Olney, not to Plaintiff. According to Third Party Defendants, this fact alone is sufficient to confirm that Plaintiff does not have standing under the TCPA. Doc. 58 at 5. As discussed above, the extrinsic evidence submitted by Third Party Defendants, including Plaintiff's AT&T statements produced in discovery, will not be considered in deciding this motion. Third Party Defendants' argument is also wrong as a matter of law. As Plaintiff points out in Sur-Reply, this very issue was recently addressed in *Manno v. Healthcare Revenue Recovery Group*, LLC, 289 F.R.D. 674, 682 (S.D. Fla. 2013). There, defendants argued Plaintiff did not have standing under the TCPA as a "called party"[5] because the cellular number in question was registered in the name of his wife. The district court rejected this argument after reviewing numerous cases, finding instead that:

> a plaintiff's status as the "called party" depends not on such technicalities as whether he or she is the account holder or the person in whose name the phone is registered, but on whether the plaintiff is the regular user of the phone and whether the defendant was trying to reach him or her by calling that phone.

*Id*. at 683.

---

554 (D. Haw. 1998) ("Grounds for a motion to strike must be readily apparent from the face of the pleadings or from materials that may be judicially noticed.").

[5] The TCPA makes it unlawful for any party to make a non-emergency call using an automatic telephone dialing system or artificial prerecorded voice message:

> to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the <u>called party</u> is charged for the call[.]

47 U.S.C. § 227(b)(1)(A)(iii) (emphasis added).

The cases cited by Third Party Defendants do not undermine the reasoning in *Manno*. In one such case, *Guttierez v. Barclays Group*, 2011 WL 579238 (S.D. Cal. Feb. 9, 2011), plaintiffs were husband and wife. The husband applied for a credit card account from the defendant, listing both his own cellular telephone number as well as his wife's. *Id*. at *1. When plaintiffs failed to make timely payments on the account, defendant began making collection calls to both telephone numbers. *Id*. Plaintiffs sued for violations of the TCPA. *Id*. Defendant argued, among other things, that the wife lacked standing under the TCPA because she was not a "called party." *Id*. at *4. Defendant maintained that because the credit card account belonged to the husband, the wife was not the "intended recipient of the call." *Id*. The district court rejected this argument, finding that "the TCPA is intended to protect the telephone subscriber, and thus it is the subscriber who has standing to sue for calls made to that number." *Id*. at *5. While *Gutierrez* may stand for the proposition that a telephone subscriber may have standing to sue for calls made to his or her line even if not the intended recipient of the calls, *Gutierrez* did not examine the inverse proposition: whether a user of a telephone line, even if not the subscriber, has standing to sue if he or she is the called party. *Manno* addressed just that issue, finding such a user does have standing under the TCPA.[6]

Even if Third Party Defendants' extrinsic evidence regarding Plaintiff's subscription to the phone line in question was considered, this evidence does not undermine Plaintiff's statutory standing.

Third Party Defendants' motion to dismiss based upon the fact that the called cellular telephone line is in his wife's name is DENIED.

//

//

---

[6] The remainder of the cases cited by Third Party Defendants do not even concern the TCPA. For example, *Hoffman v. Cingular Wireless, LLC*, 2008 WL 4093722 (S.D. Cal. Sept. 4, 2008), concerned the California's Consumers Legal Remedies Act ("CLRA"), which makes unlawful certain acts "undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer." Cal. Civ. Code § 1770(a). Defendant successfully argued for dismissal of claims brought by an individual concerning a cellular telephone agreement because the agreement was not in her name, therefore she was not the "consumer." *Id*. at *3-4. Because the statutory language of the CLRA bears no resemblance to the TCPA, *Hoffman* is not applicable here. The Court has examined the other cases cited by Third Party Defendants, *see* Doc. 58 at 6, and finds them equally inapplicable. Moreover, Third Party Defendants' argument gives no thought to the fact that California is a community property state.

14

**D.      Motion to Strike Class Allegations.**

Class certification is governed by Federal Rule of Civil Procedure 23. Rule 23(a) provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if:

>> (1) the class is so numerous that joinder of all members is impracticable;

>> (2) there are questions of law or fact common to the class;

>> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

>> (4) the representative parties will fairly and adequately protect the interests of the class.

If a proposed class satisfies all four prerequisites of Rule 23(a), one of the three alternative requirements set forth in Rule 23(b) must be satisfied as well. Plaintiff in this case seeks certification under Rule 23(b)(2) and Rule 23(b)(3). *See generally* Doc. 54.

Rule 23(b)(2) requires a finding that:

> [T]he party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or

Rule 23(b)(3) requires a finding:

> [T]hat the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

**1.      Rule 23(a).**

      **a.      Implied Threshold Requirements.**

In addition to the four requirements set forth explicitly in Rule 23(a) – numerosity, commonality, typicality, and adequacy of representation – courts often imply two additional, threshold requirements: (a) that a "defined identifiable class exists" and (b) "that the class representatives must be members of the class." *Kincaid v. City of Fresno*, 244 F.R.D. 597, 600 (E.D. Cal. 2007) (internal citation and quotation omitted).

**(1)** **Identifiability/Asertainability.**

"A class definition should be precise, objective, and presently ascertainable," though "need not be so ascertainable that every potential member can be identified at the commencement of the action." *O'Connor v. Boeing N. Am., Inc.,* 184 F.R.D. 311, 319 (C.D. Cal. 1998) (internal quotations omitted). In addition, a class that includes those who have not been harmed is both imprecise and overbroad. *See Mazur v. eBay Inc.,* 257 F.R.D. 563, 567 (N.D. Cal. 2009).

Plaintiff originally proposed the following class:

> All persons within the United States who received any telephone call from Defendant to said person's cellular telephone made through the use of any automated telephone dialing system or an artificial or prerecorded voice and such person had not previously consented to receiving such calls within the four years prior to the filing of this Complaint.

Doc. 1 at ¶ 15.

Defendant complained that this is an impermissible "fail-safe" class. A fail-safe class is "when the class itself is defined in a way that precludes membership unless the liability of the defendant is established." *Kamar v. RadioShack Corp.,* 375 F. App'x 734, 736 (9th Cir. 2010). "When the class is so defined, once it is determined that a person, who is a possible class member, cannot prevail against the defendant, that member drops out of the class. That is palpably unfair to the defendant, and is also unmanageable-for example, to whom should the class notice be sent?" *Id*; *see also Genenbacher v. CenturyTel Fiber Co. II,* 244 F.R.D. 485, 488 (C.D. Ill. 2007) (finding it impermissible to define a class in such a way that "the class members either win or are not in the class" so that "the Court cannot enter an adverse judgment against the class.").

It is true that Plaintiff's original proposed class is a "fail safe" class. Because the TCPA prohibits calls to cellular telephones using ATDSs unless prior express consent has been given, defining the class to include anyone who received such a call without prior express consent means that only those potential members who would prevail on this liability issue would be members of the class. However, in the Ninth Circuit, it is not necessary to deny certification (or in this case strike class allegations) simply because the initially proposed class is a "fail safe" class. *In re AutoZone, Inc., Wage & Hour*

*Employment Practices Litig.,* 289 F.R.D. 526, 546 (N.D. Cal. 2012). Rather, the proposed class may be redefined to avoid ascertainability problems. *Id.*

Here, Plaintiff has done just that, and now seeks certification of the following class:

> All persons within the United States who received any telephone call/s from Defendant or its agent/s and/or employee/s to said person's cellular telephone made through the use of any automatic telephone dialing system within the four years prior to the filling of the Complaint.

Doc. 54 at 2.

There is no longer any language in this class definition that could even arguably cause a "fail-safe" problem. Moreover, membership in this class can be readily determined by objective criteria. Only those persons within the United States who received autodialed or prerecorded calls from Job.com on their cellular telephone between October 19, 2008 and October 12, 2012 (the date the Complaint was filed) may be included.

Third Party Defendants respond to this new proposed class by arguing that the class is nevertheless infirm because it proposes to represent anyone contacted by Job.com, without regard to whether such persons consented to be called. Doc. 58 at 3. Although Third Party Defendants are correct that prior consent means there is no violation of the TCPA, Third Party Defendants cannot have it both ways. If it is per se impermissible to define the class in such a way that it only includes persons whose rights have been violated because they did not consent, it cannot be per se impermissible to re-define that class to include some individuals who consented to be called. To so hold would absolutely preclude class actions in TCPA cases, an outcome that finds no support in the law.

### (2)    Representative's Membership in the Class.

There is no dispute that Plaintiff falls within this revised class definition. He alleges (and it appears to be undisputed) that Job.com placed automated calls to his cellular telephone. Therefore, the implied prerequisites to Rule 23(a) are satisfied here.

//

//

**b.**      <u>Rule 23(a) Statutory Requirements</u>

**(1)**      <u>Numerosity.</u>

First, numerosity requires that the class "is so numerous that joinder of all members is impracticable…." Fed. R. Civ. P. 23(a)(1). "Although there is no exact number, some courts have held that numerosity may be presumed when the class comprises forty or more members." *In re AutoZone*, 298 F.R.D. at 530. Third Party Defendants do not dispute that the proposed class would satisfy the numerosity requirement. The Complaint alleges there are thousands of class members. Compl. ¶ 17. This is sufficient at this stage of the litigation.

**(2)**      <u>Commonality.</u>

One of the trickier questions in this motion is whether, under *Wal-Mart Stores v. Dukes*, 131 S. Ct. 2541 (2011), the proposed class fails to satisfy the commonality requirement because the issue of consent must be determined on an individual-by-individual basis. The requirement of commonality demands that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The showing required for Rule 23(a)(2) is "less rigorous" than the related requirements of Rule 23(b)(3) (discussed below). *See Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1019–20 (9th Cir. 1998). "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Id.* at 1019.

The *Wal-Mart* decision has made the commonality hurdle somewhat more difficult for plaintiffs to clear. *Wal-Mart* concerned a Title VII action brought by a proposed class of one and a half million current and former female Wal–Mart employees. 131 S. Ct. at 2547. The *Wal–Mart* plaintiffs alleged local managers discriminated against women when exercising discretion over pay and promotion decisions. *Id.* at 2548. This discretion, according to plaintiffs, was exercised disproportionately in favor of male employees, leading to an unlawful disparate impact on the female employees. *Id.* Plaintiffs further alleged that since Wal–Mart was aware of this, its failure to correct the situation was likewise unlawful. *Id.* Plaintiffs maintained "that the discrimination to which they had been subjected [was] common to <u>all</u> Wal-Mart's female employees," and therefore that the case could be litigated as a

18

nationwide class action. *Id.* (emphasis in original).

The Supreme Court ruled that the class failed to meet the commonality requirement of Rule 23(a)(2), reasoning that the claims of the class members "must depend upon a common contention." *Id.* at 2251. A "common contention" exists if "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* Because there was no "common mode of exercising discretion that pervades the entire company," the Court was unable to identify any common contentions. *Id.* at 2554-57.

To satisfy the commonality requirement Plaintiff must "demonstrate that the class members have suffered the same injury," not "merely that they have all suffered a violation of the same provision of law." *Id.* at 2551. "Even a single [common] question" will suffice. *Id.* at 2556. "What matters to class certification ... is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common <u>answers</u> apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." *Id.* at 2551(internal quotation marks omitted) (emphasis in original).

Here, Third Party Defendants maintain that questions of individual consent preclude class certification under this framework. Third Party Defendants point to *Quesada v. Banc of Am. Inv. Servs.*, Inc., 2013 WL 623288 (N.D. Cal. Feb. 19, 2013), which concerned a claim brought by a class of investment clients who alleged their telephone calls were surreptitiously recorded by Defendant's employees in violation of California's Invasion of Privacy Act. The elements of such a violation are: (i) the intentional recording, (ii) of a confidential communication, (iii) without consent. *See* Cal. Pen. Code § 632(a). The *Quesada* court had the benefit of a fairly extensive record. Defendant's employees worked in several different call centers. 2013 WL 623288 at *1. Although the plaintiff presented the testimony of one employee from one such call center who stated that calls were recorded without consent, the plaintiff acknowledged that another employee from a different call center would testify that employees there did disclose that the calls were being recorded. *Id.* at *6. In addition, at least some employees were provided with training materials instructing them to disclose to clients that calls were

recorded. *Id.* In light of this evidence, the district court concluded that the commonality requirement was not satisfied. "While there is a common question of consent that must be answered to determine [defendant's] liability …. [p]laintiff has not proposed a realistic means for classwide resolution of the common question: did Defendant obtain consent to record the call." *Id.* at *7.

Here, Plaintiff points to at least one potential common question in this case: whether Job.com's employment of an "opt-out" method of gaining consent violates the TCPA. This has the potential to generate a common answer that would drive the litigation. Unlike in *Quesada*, where the developed record revealed many possible factual disputes undermining commonality, the present record does not reveal any diversity in how potential class members encountered the "opt-out" option on Job.com's website. See *Johnson v. Gen. Mills, Inc.,* 276 F.R.D. 519, 521-22 (C.D. Cal. 2011) (approving class alleging they were misled by a common advertising campaign that had little to no variation).

Third Party Defendants appear to cite *Gannon v. Network Telephone Services, Inc.*, 2013 WL 2450199 (C.D. Cal. June 5, 2013) for the proposition that commonality is not satisfied in this case. *Gannon* did concern a TCPA defendant that employed an opt-out method of gaining consent. Doc. 50 at 17. The defendant in *Gannon* provided pay-per-call "phone sex" and "SexText" services over approximately 45,000 different telephonic entertainment lines. 2013 WL 2450199, at *1. Defendant informed callers to its service lines that by calling, the may receive special offers via text messages unless they follow certain instructions to opt out of those calls. *Id.* The *Gannon* court did not in fact address whether the Rule 23(a) commonality requirement was met; rather, it skipped directly to the question of whether common questions predominated over other questions. *Id.* at *3. The district court found that the record revealed numerous issues requiring individual inquiry, and therefore that the common question did not <u>predominate</u> over the other questions. *Id.* Simply by evaluating the Rule 23(b)(3) "predominance" issue, the *Gannon* decision implies that the Gannon class satisfied the threshold Rule 23(a) commonality requirement. Likewise, here, Plaintiff has satisfied the commonality requirement by identifying a common question that could result in a common answer that would drive the litigation.

### (3)   Typicality.

Third Party Defendants argue that typicality is lacking because Plaintiff's "unique factual circumstances will not resolve the claims of other class members because his situation is atypical of the other class members."[7] Doc. 50 at 17.

The requirement of typicality is met if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Typicality requires that a class representative "possess the same interest and suffer the same injury" as the putative class. *Falcon*, 457 U.S. at 156. Representative claims need only be "reasonably co-extensive with those of absent class members; they need not be substantially identical." *See Hanlon*, 150 F.3d at 1020. For example, in *In re AutoZone, Inc*, 289 F.R.D. at 530, one of several proposed classes would have included employees who were reimbursed mileage for use of their personal vehicles for work-related duties at the rate of thirty cents per mile. *Id*. at 547. Because the proposed representative plaintiff was never reimbursed at that rate, the typicality requirement was not satisfied and therefore that class could not be certified. *Id.* at 530.

This problem is simply not present here. Plaintiff's claim is more than reasonably co-extensive with those of the other potential class members. He suffered the same exact injury, namely, receiving calls from Job.com on his cellular telephone.

### (4)   Adequacy of Representation.

The requirement of adequate representation asks whether the representative "will fairly and adequately protect the interests of the class." *See* Fed. R. Civ. P. 23(a)(4). Courts are to inquire (1) whether the named plaintiffs and counsel have any conflicts of interest with the rest of the class and (2) whether the named plaintiff and counsel will prosecute the action vigorously for the class. *See Hanlon*, 150 F.3d at 1020. Third Party Defendants do not dispute Plaintiff's ability to satisfy this element, at least

---

[7] Third Party Defendants suggest that adequacy is lacking for the same reason. As indicated below, the adequacy of representation requirement is entirely distinguishable from typicality. Third Party Defendants' arguments do not address the actual adequacy standard.

not at this stage of the litigation.

### 2. Rule 23(b).

In addition to the elements of Rule 23(a), "a plaintiff must also demonstrate that the action can be appropriately certified under Rules 23(b)(1), (b)(2), or (b)(3)." *In re AutoZone*, 289 F.R.D. at 530. Only Rules 23(b)(2) and (b)(3) are at issue in this case.

### a. Rule 23(b)(3)

Rule 23(b)(3) provides that a class may be maintained where "questions of law or fact common to class members predominate over any questions affecting only individual members," and a class action would be "superior to other available methods for fairly and efficiently adjudicating the controversy."

### (1) Predominance.

While the "predominance" requirement is similar to the Rule 23(a)(2) commonality requirement, the standard is much higher at this stage of the analysis. *Wal–Mart,* 131 S. Ct. at 2556–57; *Hanlon,* 150 F.3d at 1022. Rule 23(a)(2) can be satisfied by even a single common question, but 23(b)(3) requires convincing proof that the common questions "predominate." *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 623–24 (1997); *Hanlon,* 150 F.3d at 1022. "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon,* 150 F.3d at 1022.

The *Gannon* case described above provides an example of how the predominance inquiry has been applied in a similar case. There, in evaluating predominance, the district court found that the record revealed numerous issues requiring individual inquiry: e.g. whether the class member dialed the entertainment lines by accident; whether the class member saw text message disclosures in advertising; how many times the class member called; whether the class member heard the disclosure during the call; and whether the member attempted to opt out. *Gannon*, 2013 WL 2450199 at *3. In light of these individual questions and others revealed by the record, the common question did not predominate over the other questions. *Id.*

22

Here, Third Party Defendants argue that Job.com's default method of obtaining consent creates similar individual issues precluding certification and offer several possible questions. First, Third Party Defendants ask: "does the failure to uncheck Job.com's consent box indicate consent?" This, ironically, is exactly the common question proposed by Plaintiff and does not appear to require any individualized determinations. Second, Third Party Defendants ask: "Does it indicate the person did not see the box?" and relatedly "Does it indicate that the person did not notice that the box was automatically checked or did not understand they could un-check it?" On the present record, there is no way to know whether this is a question that would predominate over or subordinate itself to the common question. The record does not reveal what the box looks like, where it is placed on Job.com's registration page(s), or whether anyone has ever complained that it is not readily visible. Moreover, it is not even clear that this is legally relevant. If use of an opt-out method such as that employed by Job.com is per se unlawful, then it does not matter if it is visible.

Although it is conceivable that individualized questions may predominate over the common question articulated above, the present record does not warrant such a finding at this time.

### (2) Superiority of Class Action.

Rule 23(b)(3) also requires that a class action be "superior to other available methods for fairly and efficiently adjudicating" this controversy. Pertinent to that determination is: (a) the class members' interests in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already begun by or against class members; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (d) the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3). Although Third Party Defendants nominally challenge superiority, *see* Doc. 50 at 9, 15, and 19, they do not make any arguments specific to this element. Therefore, the Court declines to address this issue at this time, as this is Third Party Defendants' motion to strike, not a motion to certify the class.

### b. Rule 23(b)(2).

Plaintiff alternatively seeks certification under Rule 23(b)(2), which applies when "the party

1  opposing the class has acted or refused to act on grounds that apply generally to the class, so that final

2  injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." The

3  TCPA makes injunctive relief available to aggrieved parties. 47 U.S.C. § 227(g). Third Party Defendants

4  do not challenge Plaintiff's ability to satisfy the requirements of Rule 23(b)(2), at least not in the present

5  motion.

6     Third Party Defendants' motion to strike the class allegations and deny class certification is

7  DENIED WITHOUT PREJUDICE.

8                          IV. <u>CONCLUSION</u>

9     For the reasons set forth above:

10    (1) Third Party Defendants' motion to dismiss based upon Plaintiff's lack of statutory standing is

11  DENIED WITHOUT PREJUDICE; and

12    (2) Third Party Defendants' motion to strike the class allegation is DENIED WITHOUT

13  PREJUDICE.

14  **SO ORDERED**
    **Dated: September 30, 2013**

15                                    **/s/ Lawrence J. O'Neill**
                                      **United States District Judge.**
16

17

18

19

20

21

22

23

24

25

26