**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **PETER OLNEY,** | Case No. 1:12-cv-01724-LJO-SKO |
| Plaintiff, | MEMORANDUM DECISION AND ORDER RE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Doc. 110). |
| v. | |
| **JOB.COM, INC., et al.,** | |
| Defendants. | |

Now pending before the Court is Defendant Job.com's ("Job.com's" or "Defendant's") motion for summary judgment. Plaintiff Peter Olney ("Plaintiff") has opposed the motion, and Defendant has filed a reply. The Court has reviewed the parties' submissions, and for all the reasons discussed below DENIES Defendant's motion for summary judgment.

### I.  BACKGROUND

**A.  Factual Background**

This case concerns alleged violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq*. Specifically, Plaintiff claims that Defendant made improper automated telephone calls to his cell phone. The facts are as follows.[1]

**1.  Plaintiff Registers With Resume-Now**

On August 12, 2012, Plaintiff registered his resume with a website called "Resume-Now" as part of his efforts to seek new employment. Resume-Now is owned and operated by LiveCareer, Inc. ("LiveCareer"). Registration with Resume-Now generally consists of three steps. First, the registrant is prompted to create or upload a new resume. Second, the registrant is asked for information

---

[1] The facts are undisputed unless otherwise indicated.

1

regarding the job he or she seeks.  Third, the registrant is asked to enter and confirm his or her email address.  According to Defendant, at this point the registrant also (1) is given an opportunity to review Resume-Now's terms of use and privacy policy; (2) is asked to acknowledge that he or she has read and agrees to the terms of use and privacy policy; and (3) is allowed to uncheck a box that reads: "[R]eceive . . . free information on managing my career."

On August 13, 2012, Plaintiff used the Resume-Now's resume posting service, a service that is offered only to subscribing members.  To initiate the resume posting service, Plaintiff clicked a button labeled: "Post Resume.  Instantly post your resume to 90+ job boards."  Plaintiff was then directed to the resume posting splash page, where Plaintiff was given the option to choose from various categories of job search websites that he wished his resume to be posted.  Plaintiff chose to post his resume on "General Sites."  Upon choosing "General Sites," Plaintiff was directed to a pop-up page displaying a list of additional job sites where his resume would be sent.  "Job.com" was one of the websites listed in the pop-up page.

As part of this process, Plaintiff was required to provide additional contact information.  The website read: "Enter your mailing address and current phone [number] so that recruiters and potential employers can contact you."  Plaintiff entered his cell phone number on this page.  Plaintiff was then given another chance to review Resume-Now's terms of use and privacy policy.  Plaintiff reviewed the policy and completed the resume posting process by clicking "Post."

### 2. Plaintiff Registers With Job.com

On August 17, 2012, Plaintiff registered an account with Job.com via Resume-Now's website.  The registration process consisted of populating fields on five pages, one of which was the "Profile" page. On the Profile page, Plaintiff's cell phone number was entered in the "Home Phone" field.  Defendant asserts that Plaintiff also left a box unchecked that read: "[B]y keeping the box above checked, I'd like to be contacted by phone to discuss educational opportunities to help prepare me for my dream career."  Although the box was checked by default, a registrant may uncheck the box if they wish to opt out of the service. The parties refer to this box as "the opt-out box." Plaintiff claims that he never visited Job.com, never saw the opt-out box, and therefore could not have checked it nor left it unchecked.

### 3. Windy City Calls Plaintiff Regarding Educational Programs

Defendant forwarded Plaintiff's profile, including his phone number, to a third party, Windy City Call Center, LLC ("Windy City"). Windy City operates the Windy City Call Center, which is used to provide "education leads" to higher learning institutions. Defendant, through Windy City, placed multiple calls a day to Plaintiff on August 17, 2012 through September 4, 2012, for the purpose of selling Defendants' or a third party's services.

### B. Relevant Procedural History

Plaintiff initiated this action on October 19, 2012 on behalf of himself and all other similarly situated individuals.[2] According to Plaintiff's second amended complaint (the "SAC") – presently the operative complaint – Plaintiff seeks statutory damages and injunctive relief against Job.com for negligent and willful violations of the TCPA. SAC ¶ 1.

On March 4, 2014, Defendant filed the now pending motion for summary judgment. Plaintiff filed an opposition to the motion on March 25, 2014, and Defendant filed a reply on April 1, 2014. In addition, Plaintiff filed an objection to Defendant's reply on April 3, 2014, to which Defendant filed a response on April 4, 2014.

Defendant asserts it is entitled to summary judgment on Plaintiff's TCPA claim for three reasons. First, Defendant argues that Plaintiff provided prior express consent to receive calls from Defendant. Second, Defendant argues that LiveCareer was Plaintiff's agent and provided Defendant express consent to call Plaintiff. Third, Defendant argues it is entitled to summary judgment based on a common sense evaluation of the circumstances.

Plaintiff asserts none of Defendant's arguments demonstrates that it is entitled to summary judgment. The thrust of Plaintiff's argument is that there is a genuine issue of material fact as to whether Defendant obtained Plaintiff's prior express consent to be called. Plaintiff asserts that he did not directly give Defendant his telephone number and that he did not give Defendant his prior express consent to receive marketing calls from Defendant or third parties. Further, Plaintiff argues that Defendant's "opt-out" method was insufficient to obtain Plaintiff's prior express consent. Plaintiff also asserts that LiveCareer could not have provided Defendant with his express consent because no

---

[2] On January 13, 2014, Plaintiff withdrew his motion for class certification. (Doc. 91.)

3

agency relationship existed between Defendant and LiveCareer.

## II.     LEGAL STANDARD

Summary judgment is appropriate when the pleadings, disclosure materials, discovery, and any affidavits provided establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that may affect the outcome of the case under the applicable law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable trier of fact could return a verdict in favor of the nonmoving party." Id.

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). The exact nature of this responsibility, however, varies depending on whether the issue on which summary judgment is sought is one in which the movant or the nonmoving party carries the ultimate burden of proof. *See Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007); *Cecala v. Newman*, 532 F. Supp. 2d 1118, 1132 (D. Ariz. 2007). If the movant will have the burden of proof at trial, it must demonstrate, with affirmative evidence, that "no reasonable trier of fact could find other than for the moving party." *Soremekun*, 509 F.3d at 984. In contrast, if the nonmoving party will have the burden of proof at trial, "the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case." *Id.* (citing *Celotex*, 477 U.S. at 323).

If the movant satisfies its initial burden, the nonmoving party must go beyond the allegations in its pleadings to "show a genuine issue of material fact by presenting *affirmative evidence* from which a jury could find in [its] favor." *FTC v. Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009) (emphasis in the original). "[B]ald assertions or a mere scintilla of evidence" will not suffice in this regard. Id. at 929. *See also Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) ("When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.") (citation omitted). "Where the record

as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

In resolving a summary judgment motion, "the court does not make credibility determinations or weigh conflicting evidence." *Soremekun*, 509 F.3d at 984. That remains the province of the jury or fact finder. *See Anderson*, 477 U.S. at 255. Instead, "[t]he evidence of the [nonmoving party] is to be believed, and all justifiable inferences are to be drawn in [its] favor." Id. Inferences, however, are not drawn out of the air; the nonmoving party must produce a factual predicate from which the inference may reasonably be drawn. *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir. 1987).

### III. DISCUSSION

Defendant argues that Plaintiff expressly consented to receive calls from Windy City regarding educational opportunities. Defendant asserts that Plaintiff consented by checking (or leaving unchecked) the opt-out box on Defendant's website when he registered his account via Resume-Now. Defendant argues that, even if Plaintiff did not do so, he provided his cell phone number to Defendant, which constituted express prior consent for Windy City to call him. Defendant also argues that it did not violate TCPA regardless of whether Plaintiff actually gave Defendant his prior express consent to be called because Defendant believed in good faith that Plaintiff had done so. Finally, Defendant maintains that LiveCareer, as Plaintiff's agent, provided Defendant with Plaintiff's express prior consent for Windy City to call him.

**A. Prior Express Consent**

A violation of TCPA occurs only where a party calls a cellular telephone number using an automatic telephone dialing system ("ATDS") without the recipient's prior express consent. *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012); § 227(b)(1)(A). "Prior express consent is an affirmative defense, meaning that the defendant bears the burden of proving it." *Pinkard v. Wal-Mart Stores, Inc.*, No. 3:12-CV-2902-CLS, 2012 WL 5511039, at *3 (N.D. Ala. Nov. 9, 2012).

TCPA does not define what constitutes "prior express consent." However, Congress delegated authority to the Federal Communications Commission (the "FCC") to prescribe regulations that

implement TCPA's provisions. 47 U.S.C. §§ 227(b)(2), (f). The FCC's interpretations of TCPA are controlling unless invalidated by a court of appeals. *See* 28 U.S.C. § 2342 et seq. (the "Hobbs Act"); *Pacific Bell v. Pac West Telecomm*, 325 F.3d 1114, 1125 (9th Cir. 2003).

The FCC found that under TCPA

> [p]ersons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary. Hence, telemarketers will not violate [TCPA rules] by calling a number which was provided as one to which the called party wishes to be reached.

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Report and Order, 7 FCC Rcd 8752, 8769 ¶ 31 (Oct. 16, 1992) (the "FCC Order").

Defendant argues that the FCC Order defined "prior express consent" as contemplated in TCP. Plaintiff asserts that it did not, but that the Ninth Circuit did so in *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (2009). Plaintiff argues that the court in *Satterfield* defined "express consent" as "consent that is clearly and unmistakably stated." Doc. 113 at 20 (quoting *id.* at 955). Furthermore, Plaintiff contends that the facts of *Satterfield* are analogous to the facts of this case and that, under *Satterfield*, Plaintiff's consent could not transfer to unrelated third parties, such as Windy City.

In the September 30, 2013 Order, the Court noted the Ninth Circuit's discussion of the meaning of "express prior consent" contained in *Satterfield*. Because the Court determined it was unnecessary at that point to resolve the meaning of "express prior consent" and whether Plaintiff had given his to Defendants, the Court did not rule on those issues. *See* Doc. 67 at 12. Accordingly, that discussion is not the law of the case.

Plaintiff misinterprets *Satterfield*. "The FCC appears to have intended in its 1992 order to provide a definition of 'prior express consent' in the TCPA," which is contained in paragraph 31 of the FCC Order. *Baird V. Sabre, Inc.*, No. CV 13-000 SVW, __ F.Supp.2d __, 2014 WL 320205, at *5 (C.D. Cal. Jan. 28, 2014) (citing the FCC Order, ¶ 7 ("Definitions of the terms 'prior express consent' and 'established business relationship' [in TCPA] are set forth in paras. 29-35, *infra*.")). As the court in

*Baird* also noted, the Ninth Circuit "had no occasion [in *Satterfield*] to consider the validity of the FCC's interpretation of 'express consent.'" Accordingly, the court in *Baird* found that the definition contained in paragraph 31 of the FCC order governed its analysis of the meaning of "express prior consent" within TCPA. *Id.* at *6 (citing § 2342 of the Hobbs Act).

The Court finds that the court in *Baird* correctly observed that the Ninth Circuit did not discuss (and therefore could not invalidate) the FCC Order. Thus, the Court finds that the FCC Order is controlling for purposes of interpreting TCPA insofar as a court of appeals has not invalidated it.[3] Because the Court has found no decision doing so, the FCC's pronouncement of what constitutes "prior express consent" under the TCPA, as stated in paragraph 31 of the FCC Order, controls here: "[p]ersons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary."

Here, the undisputed facts establish that Plaintiff registered an account with LiveCareer through Resume-Now. On August 14, 2012, Plaintiff "used LiveCareer's resume posting service," which is available "only to its subscribing members." Doc. 113-1, ¶ 18. Plaintiff then "chose to post his resume to job search websites classified as 'General Sites,'" Doc. 113-1, ¶ 19, one of which was Job.com. Doc 113-1, ¶ 21. Plaintiff then "completed a multi-step resume posting process in which he provided additional information to be included in his profile," Doc. 113-1, ¶ 23, which included his cell phone number. Doc 113-1, ¶ 24. Part of the resume posting process involved "a contact information page, which contained the following text: 'Enter your mailing address and current phone so that recruiters and potential employers can contact you.'" Doc. 113-1, ¶ 24. Plaintiff entered his cell phone number.

---

[3] Plaintiff argues that a 2012 FCC Order controls here. *See* Doc. 113 at 22 (citing *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act*, 27 F.C.C.R. 1830 (2012)). As Plaintiff notes, that Order did not go into effect until 2013, years after Defendants' allegedly unlawful conduct. Plaintiff asserts that the Order "shows the evolution of 'express consent' within the TCPA," but provides no authority to explain why it controls here.

On August 17, 2012, Plaintiff registered an account with Job.com via Resume-Now's website. Doc. 113-1, ¶ 32. As part of that registration process, Plaintiff "provided his personal information, including . . . his telephone number." Doc. 113-1, ¶ 33. Defendant "was unaware Plaintiff had used Resume-Now to register on its website." Doc. 113-1, ¶ 32.

Defendant asserts that, because the opt-out box was checked when Plaintiff registered his account, "Defendant forwarded Plaintiff's profile information to Windy City, a third party call center, who attempted to fulfill Plaintiff's request for additional information regarding educational opportunities." Plaintiff asserts that he "did not leave the box checked or check the box and did not personally submit his personal information on the Job.com website because [he] . . . never visited the website for Job.com." Doc. 113-1, ¶ 36. Coupled with the fact that Defendant acknowledges that it appeared as if Plaintiff had created his account through Defendant's site even though he created it on Resume-Now, a reasonable factfinder might find that Plaintiff never checked (or failed to uncheck) the opt-out box. Accordingly, the Court finds that genuine issues of material fact exist as to whether Plaintiff consented to receive calls concerning educational opportunities when he created an account with Defendant through Resume-Now.

**B. Scope of Prior Express Consent.**

Under TCPA, the scope of an individual's express prior consent governs who may call that individual and the purpose for doing so. *See Satterfield*, 569 F.3d at 955. The FCC has explained "that autodialed and prerecorded message calls to wireless numbers that are provided by the called party to a creditor in connection with an existing debt are permissible as calls made with the 'prior express consent' of the called party." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 F.C.C.R. 559 (Jan. 4, 2008). Likewise, numerous courts have found that "plaintiffs who provided a business with their telephone number and then received a text message from the business had no claim under [TCPA]" because they had consented to receive the

8

text message. *Baird*, 2014 WL 320205, at *2 (citations omitted). Although the Court is unaware of any Ninth Circuit case to directly address the issue of whether the scope of an individual's "prior express consent" within TCPA is an issue of fact or law, courts appear to treat it as one of fact. *See, e.g.*, *id.* at *6 (finding no genuine factual dispute that the plaintiff had consented to receive the type of text message she received that allegedly violated TCPA); *Roberts v. PayPal, Inc.*, No. C 12-622 PJH, 2013 WL 2384242, at *4 (S.D. Cal. May 30, 2013) (finding that the plaintiff had consented to receive text messages "closely related to the circumstances under which [he had] . . . provided his cell phone number"); *Aderhold v. Car2go N.A., LLC*, No. C12-489RAJ, 2014 WL 794802, at *8 (W.D. Wash. Feb. 27, 2014).

Conversely, the Ninth Circuit held in *Satterfield* that the defendant's unsolicited text message to the plaintiff violated TCPA. In that case, the plaintiff provided her cell phone number to Nextones to receive a free ringtone. 569 F.3d at 949. In doing so, the plaintiff agreed "to receive promotions from Nextones affiliates and brands." *Id.* The defendant, a book publisher, obtained the cell phone numbers of approximately 100,000 Nextones subscribers, including that of the plaintiff. The defendant subsequently sent a text message to the plaintiff with promotional material concerning a book defendant published. *Id.* The plaintiff brought suit against the defendant on the ground that it violated TCPA in that she had not consented to receive the text message. The defendant argued the text message did not violate TCPA because the plaintiff had consented to receive promotional messages, such as the one at issue. The Ninth Circuit held that the defendant's unsolicited text message violated TCPA. The court held that the plaintiff had solely consented to receiving promotional material from "Nextones or their affiliates and brands" and that the defendant was not an affiliate or brand of Nextones. The court therefore held that the plaintiff's consent "cannot be read as consenting to the receipt of [the defendant's] . . . promotional material." *Id.* at 955.

An individual may indirectly provide a third party with express consent to be called under

TCPA. In *Baird*, the plaintiff purchased an airline ticket and, in doing so, provided the airline company with her cell phone number. 2014 WL 320205, at *1. The defendant, a third party, contracted with the airline to provide flight notification services to passengers. *Id.* Approximately one month after the plaintiff purchased her ticket, the defendant sent her a text message inquiring whether she would like to receive flight notification updates via text message. *Id.* The plaintiff brought suit against the defendant on the ground that the text message violated TCPA in that it was sent without her prior express consent. *Id.* The court found that, under the FCC order, the plaintiff had "consented to be contacted on her cellphone about flight-related matters." *Id.* at *6. Thus, the court found that although the defendant was a third party, its text message to the plaintiff "fell within the scope of her 'prior express consent.'" *Id.*

It is undisputed that Plaintiff provided his cell phone number to Defendant to be contacted about potential employment opportunities. Defendant argues that, even if Plaintiff did not consent via the opt-out box, he gave Defendant his express prior consent to be called regarding educational opportunities when he provided his cell phone number to Defendant via Resume-Now's resume posting service.

Plaintiff argues that the FCC's Order "specifically stated that the provision of a telephone number only provides *permission* to be called in '*normal business communications*,'" Doc. 113 at 18 (citing the FCC Order, ¶ 31 fn. 57) (emphasis in original) and that a genuine issue of material fact exists "as to whether the calls at issue from Windy City soliciting educational opportunities constitute *normal business communications*." *Id.* (emphasis in original). Plaintiff asserts that he provided Defendant prior express consent only to discuss employment opportunities. In Plaintiff's view, because "[e]ducational opportunities are very different from employment opportunities . . . calls for [educational opportunities] . . . would be outside the scope of any prior express consent." Doc. 113 at 18. Defendant contends these arguments fail because "TCPA does not require the call to be for the

10

*exact* purpose for which the number was provided" and "educational opportunities are undeniably relevant and related to the employment process." Doc. 115 at 5 (emphasis in original).

Defendant is correct that TCPA does not require that a call be made "for the *exact* purpose for which the number was provided," but it undoubtedly requires that the call bear some relation to the product or service for which the number was provided. Defendant acknowledges that educational opportunities are not the same as employment opportunities, but argues that they are "undeniably relevant and related to the employment process." Doc. 115 at 5. Defendant thus maintains that the calls from Windy City soliciting educational opportunities fell within the scope of Plaintiff's prior express consent. It may be true that the potential educational opportunities that Windy City was offering could have helped Plaintiff's employment prospects; however, it is equally possible that the opportunities were wholly irrelevant to Plaintiff's employment goals. The Court therefore finds that genuine issues of material fact exist as to whether the scope of Plaintiff's express consent extended to Windy City's calls regarding educational opportunities.

**C. Good Faith Belief/Strict Liability.**

Defendant urges the Court to find that it did not violate TCPA because it reasonably and in good faith believed Plaintiff consented to be called regarding educational opportunities. In support, Defendant notes that it is undisputed that Defendant did not know that Plaintiff used Resume-Now to register his account with Defendant. Further, Defendant maintains that it appeared Plaintiff had registered on its site and "did not uncheck the box corresponding with the offer to be contacted by phone regarding educational opportunities, nor did he provide any other 'instructions to the contrary' to indicate he did not want to receive such calls on his cell phone." Defendant therefore asserts it had a good faith basis to believe that Defendant opted to receive calls about educational opportunities.

Even if Defendant reasonably and in good faith believed it had Plaintiff's consent to contact him regarding educational opportunities, Defendant may still be liable under TCPA. Defendant cites

11

*Chyba v. First Financial Mgmt., Inc.*, 12-CV-1721-BEN (WVG), 2013 6880237 (S.D. Cal. Nov. 20, 2013) to support its argument that a party may not be liable for calling someone in violation of TCPA if it believed in good faith that it had the consent of the recipient. Doc. 110-1 at 29. Plaintiff asserts this argument fails because TCPA is a strict liability statute. Doc. 113 at 31 (citing *Alea London, Ltd. v. American Home Servs., Inc.*, 638 F.3d 768, 766 (11th Cir. 2011) ("The TCPA is essentially a strict liability statute which imposes liability for erroneous unsolicited faxes."); *Universal Underwriters Ins. Co. v. Lou Fusz Auto. Network, Inc.*, 401 F.3d 876, 882 n.3 (8th Cir. 2005) ("The [TCPA] . . . makes no exception for senders who mistakenly believe that recipients' permission or invitation existed. The . . . issues of knowledge and willfulness . . . are material to the question of treble damages.")

The parties have cited no authority from the Ninth Circuit that addresses whether TCPA is a strict liability statute, and the Court is unaware of any. The Eight Circuit is the only court of appeals that has explicitly addressed the issue, however, and it held that TCPA is a strict liability statute. *See Alea London*, 638 at 766. Other courts of appeals have suggested the same. *See Universal Underwriters*, 401 F.3d at 882 n.3; *cf. Soppet v. Enhanced Recovery*, 679 F.3d 637 (7th Cir. 2012) (holding defendant liable under TCPA for unsolicited calls for calling numbers that, although previously assigned to defendant's clients, had been reassigned to unrelated third parties).

*Chyba* is the only decision of which the Court is aware to find that a party otherwise liable under TCPA for making a call to an individual without consent may not be if it had a good faith basis to believe the call's recipient consented to the call. Even assuming such a good faith exception exists, *Chyba* is distinguishable to this case. In *Chyba*, the plaintiff brought suit against the defendant for calls to her cell phone that allegedly violated TCPA. 2013 WL 6880237, at *1. A car rental company hired the defendant, a credit collections company, to assist in collecting a debt the car rental company claimed was due from the plaintiff. *Id.* at *10. The car rental company therefore provided the defendant with the plaintiff's cell phone number that she had provided when she rented a car. *Id.* The

12

defendant made calls to the plaintiff in an attempt to collect the car rental company's debt. *Id.* The plaintiff alleged that those calls violated TCPA in that she had not consented to receive calls from the defendant. *Id.*

The court noted that "[w]hen a consumer provides a cellular telephone number to a creditor as part of the underlying transaction, the provision of the number constitutes express consent for the creditor to contact the consumer about the debt." *Id.* at *10 (citing *In re Rules and Regs. Implementing the Telephone Consumer Protection Act of 1991*, 23 F.C.C. Rcd. 559, 564–65 (2008)). Because the car rental company had the plaintiff's express consent to be called regarding her alleged debt, the court found that the defendant had a good faith basis to believe it had the plaintiff's consent to be called concerning the debt. *Id.* at *11.

Here, the undisputed facts demonstrate that Plaintiff had consented to receive communications concerning employment opportunities. Had Defendant called Plaintiff about potential employment opportunities, its argument that it had a good faith basis to make unsolicited phone calls to Plaintiff may be stronger. In any event, the Court declines to find TCPA provides a good faith exception and, even if it did, a genuine issue of material fact would exist to whether Defendant reasonably and in good faith relied on the information proffered to it when Plaintiff created his account with Defendant through Resume-Now.

**D.  LiveCareer as Plaintiff's Agent**

Defendant's final argument is that even if "Plaintiff did not directly provide [Defendant] . . . with prior express consent to call his cell phone, LiveCareer, acting as Plaintiff's agent, provided [Defendant] . . . with such consent." Doc. 110-1 at 21. Defendant argues that Plaintiff used LiveCareer as his agent to sign up on Defendant's website via Resume-Now and therefore knowingly provided Defendant with his phone number without "any instructions to negate his consent to be contacted at that number." Doc. 110-1 at 27. Defendant asserts that "Plaintiff's agent could have easily provided

such instructions by un-checking the consent box on [Defendant's] . . . website; however, it failed to do so." *Id.* Thus, Defendant maintains that "Plaintiff is bound by his agent's actions, which provided [Defendant] . . . with prior express consent to call Plaintiff's cell phone."

Whether an agency relationship exists is generally an issue of fact. *See Pacific MDF Prods., Inc. v. Bio-Mass Energy Concepts, LLC*, No. Civ. S-05-642 LKK/JFM, 2006 WL 3359211, at \*6 (E.D. Cal. Nov. 20, 2006) (citing L. *Byron Culver & Assocs. v. Jauodi Industrial & Trading Corp.*, 1 Cal. App. 4th 300, 305 (1991) ("The existence of an agency is a factual question within the province of the trier of fact."); *Pistone v. Superior Court*, 228 Cal. App. 3d 672 (1991) ( "The existence or absence of agency ordinarily poses a question of fact. Unless the evidence permits only one inference, the question is one for the trier of fact.")). Plaintiff asserts that he did not believe LiveCareer was acting as his agent due, in part, to the terms of ResumeNow's Terms and Conditions, which explicitly state that no agency relationship would be formed between Plaintiff and LiveCareer. Moreover, Plaintiff claims that he did not authorize LiveCareer "to provide prior express consent . . . to receive marketing calls." Doc. 113 at 9. Accordingly, the Court finds that genuine issues of material fact exist as to whether Defendant obtained Plaintiff's consent via LiveCareer as his agent to be called regarding educational opportunities.

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES Defendant's motion for summary judgment.

IT IS SO ORDERED.

Dated: __May 1, 2014__            __/s/ Lawrence J. O'Neill__
                                                       UNITED STATES DISTRICT JUDGE