UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PETER OLNEY,<br><br>        Plaintiff,<br><br>        v.<br><br>JOB.COM, INC., et al.,<br><br>        Defendants. | Case No. 1:12-cv-01724-LJO-SKO<br><br>MEMORANDUM DECISION AND ORDER RE DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS (DOC. 133) |

      Third-party Defendants ResumeDirector.com, North America LiveCareer, Inc., and LiveCareer, Ltd. (collectively, "Third Party Defendants" or "TDPs") move for judgment on the pleadings on Job.com, Inc.'s third party complaint (Doc. 24). Doc. 133. For the reasons discussed below, the Court GRANTS TDPs' motion.

### I. BACKGROUND

**A.**    **Factual Background**

      This case concerns alleged violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq*. Specifically, Plaintiff Peter Olney claims that Defendants are liable under TCPA for their involvement in improper automated telephone calls to his cell phone. The facts are as follows.[1]

              **1.**    **Plaintiff Registers With Resume-Now**

      On August 12, 2012, Plaintiff registered his resume with a website called "Resume-Now" as part of his efforts to seek new employment. Resume-Now is owned and operated by LiveCareer, Inc. ("LiveCareer"). Registration with Resume-Now generally consists of three steps. First, the registrant

---
[1] The facts are undisputed unless otherwise indicated.

is prompted to create or upload a new resume. Second, the registrant is asked for information regarding the job he or she seeks. Third, the registrant is asked to enter and confirm his or her email address. According to Job.com, at this point the registrant also (1) is given an opportunity to review Resume-Now's terms of use and privacy policy ("the terms"); (2) is asked to acknowledge that he or she has read and agrees to the terms of use and privacy policy; and (3) is allowed to uncheck a box that reads: "[R]eceive . . . free information on managing my career."

On August 13, 2012, Plaintiff used the Resume-Now's resume posting service, a service that is offered only to subscribing members. To initiate the resume posting service, Plaintiff clicked a button labeled: "Post Resume. Instantly post your resume to 90+ job boards." Plaintiff was then directed to the resume posting splash page, where Plaintiff was given the option to choose from various categories of job search websites that he wished his resume to be posted. Plaintiff chose to post his resume on "General Sites." Upon choosing "General Sites," Plaintiff was directed to a pop-up page displaying a list of additional job sites where his resume would be sent. "Job.com" was one of the websites listed in the pop-up page.

As part of this process, Plaintiff was required to provide additional contact information. The website read: "Enter your mailing address and current phone [number] so that recruiters and potential employers can contact you." Plaintiff entered his cell phone number on this page. Plaintiff was then given another chance to review Resume-Now's terms of use and privacy policy. Plaintiff reviewed the policy and completed the resume posting process by clicking "Post."

### 2. Plaintiff Registers With Job.com

On August 17, 2012, Plaintiff registered an account with Job.com via Resume-Now's website. The registration process consisted of populating fields on five pages, one of which was the "Profile" page. On the Profile page, Plaintiff's cell phone number was entered in the "Home Phone" field. Defendant asserts that Plaintiff also left a box unchecked that read: "[B]y keeping the box above checked, I'd like to be contacted by phone to discuss educational opportunities to help prepare me for my dream career." Although the box was checked by default, a registrant may uncheck the box if they wish to opt out of the service. This is referred to as "the opt-out box." Plaintiff claims that he never visited Job.com, never saw the opt-out box, and therefore could not have checked it nor left it

unchecked.

### 3. Windy City Calls Plaintiff Regarding Educational Programs

Job.com forwarded Plaintiff's profile, including his phone number, to a third party, Windy City Call Center, LLC ("Windy City"). Windy City operates the Windy City Call Center, which is used to provide "education leads" to higher learning institutions. Job.com ("Job"), through Windy City, placed multiple calls a day to Plaintiff's cell phone between August 17, 2012 and September 4, 2012, for the purpose of selling Defendants' or a third party's services.

### B. Relevant Procedural History

Plaintiff initiated this action on October 19, 2012 on behalf of himself and all other similarly situated individuals.[2] According to Plaintiff's second amended complaint (the "SAC") – presently the operative complaint – Plaintiff seeks statutory damages and injunctive relief against Job.com for negligent and willful violations of the TCPA. SAC ¶ 1.

On March 22, 2013, Job filed its third party complaint against Defendants. Doc. 24. Job.com asserts six causes of action against Defendants for (1) negligent misrepresentation; (2) breach of contract; (3) implied indemnity; (4) equitable indemnity; (5) express indemnity; and (6) contribution. *Id.* at 4-9.

Defendants filed the pending motion on May 23, 2014. Defendants assert they are entitled to judgment in their favor on all six of Job's causes of action and therefore Job's third party complaint should be dismissed with prejudice. Doc. 133-1 at 3, 13. Job opposed the motion on June 5, 2014. Defendants filed a reply on June 12, 2014.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(c) permits a party to seek judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." "A motion for judgment on the pleadings should be granted where it appears the moving party is entitled to judgment as a matter of law." *Geraci v. Homestreet Bank*, 347 F.3d 749, 751 (9th Cir. 2003). A "judgment on the pleadings is appropriate when, even if all allegations in the complaint are true, the moving party is entitled to judgment as a matter of law." *Westlands Water Dist. v. Firebaugh Canal*, 10 F.3d 667, 670 (9th

---

[2] On January 13, 2014, Plaintiff withdrew his motion for class certification. (Doc. 91.)

Cir.1993).

"A judgment on the pleadings is a decision on the merits." *3550 Stevens Creek Assocs. v. Barclays Bank of California,* 915 F.2d 1355, 1356 (9th Cir.1990), *cert. denied*, 500 U.S. 917 (1991). A Fed. R. Civ. P. 12(c) motion "is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Herbert Abstract Co. v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990) (per curiam). "[T]he central issue is whether, in light most favorable to the plaintiff, the complaint states a valid claim for relief." *Hughes v. Tobacco Inst., Inc.*, 278 F.3d 417,420 (5th Cir.2001). "[A]ll allegations of fact of the opposing party are accepted as true." *Austad v. United States*, 386 F.2d 147, 149 (9th Cir.1967). Thus, a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is "functionally identical" to a motion to dismiss under Rule 12(b)(6). *Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989).

Like a Rule 12(b)(6) motion to dismiss, a Rule 12(c) motion challenges the legal sufficiency of an opposing party's pleadings. "When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990). Dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Id.* "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (internal citations and quotations omitted). "While a complaint . . . does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitations of the elements of a cause of action will not do." *Id.* at 1964.

### III. DISCUSSION

**A. Choice of Law**

TDPs argue that either Virginia or California law should apply. They do not, however, firmly argue for the application of either. TDPs claim that Job's claims fail regardless of whether the court chooses to apply California or Virginia law. Doc. 143 at 8 n.1.  Nonetheless, TDPs suggest that

Virginia law might apply because "Job.com's principal place of business is in Virginia, and, therefore, the alleged misrepresentation and injury occurred in Virginia, which weighs in favor of applying Virginia law to the substantive issues in this case." Doc. 133-1 at 9.

Job argues that California law should apply here. Job notes that "the parties have agreed for this case to be venued in California" and that Plaintiff's "interaction with Third Party Defendants . . . presumably took place in California as [Plaintiff] is a California resident." Doc. 136 at 3. Job also notes that Third Party Defendants "relied on California law with regard to its interactions with Job.com in their Motion to Deny Class Certification and Strike Class Allegations." *Id.*

"California follows a three-step 'governmental interest analysis' to address conflict of laws claims and ascertain the most appropriate law applicable to the issues where there is no effective choice-of-law agreement." *Washington Mutual Bank, FA v. Superior Court*, 24 Cal.4th 906, 919 (2001). First, the Court must determine whether the substantive law of the two states differs. *Id.* The foreign law proponent carries the burden of proving that the states' laws differ materially. *Id.* If the laws are "materially different," the Court must "determine what interest, if any, each state has in having its own law applied to the case." *Id.* at 920. If each state has an interest in having its law applied, the Court must "select the law of the state whose interests would be 'more impaired' if its law were not applied." *Id.*; *see also Keilholtz v. Lennox Hearth Products Inc.*, 268 F.R.D. 330, 341 (N.D. Cal. Feb. 16, 2010) (party advocating application of foreign law bears the burden of showing that that foreign law should apply).

"A party advocating application of foreign law 'must demonstrate that the [foreign] rule of decision will further the interest of that foreign state and therefore that it is an appropriate one for the forum to apply to the case before it." *Tucci v. Club Mediterranee, S.A.*, 89 Cal. App. 4th 180, 188-89 (2001). "If California law can be applied without violating the policy of the foreign state, there is a false conflict, and California law should be applied." *Keilholtz*, 268 F.R.D. at 341 (citing *id.*).

TPDs have utterly failed to meet their burden to demonstrate that Virginia law should apply here. The Court need not determine whether the laws of Virginia and California differ because TPDs provide no reason to apply Virginia law aside from suggesting that the alleged misrepresentations occurred in Virginia because Job's principal place of business is in Virginia. TPDs do not provide any

argument as to how the application of California law here would impair the interests of Virginia. In the absence of any compelling reason to apply Virginia law, the Court finds that California law should apply here. *See id.*

### 1. Negligent misrepresentation.

To state a claim for negligent misrepresentation, Job must prove the following: "misrepresentation of a past or existing material fact, without reasonable ground for believing it to be true, and with intent to induce another's reliance on the fact misrepresented; ignorance of the truth and justifiable reliance on the misrepresentation by the party to whom it was directed; and resulting damage." *Shamsian v. Atlantic Richfield Co.*, 107 Cal. App. 4th 967, 983 (2003). "Negligent misrepresentation is narrower than fraud . . . [and] requires a false statement." *Id.* at 984.

TPDs argue that Job's negligent misrepresentation claim fails because Job has failed to allege any affirmative misrepresentation TPDs made to Job. Job alleges TPDs "did not have Plaintiff's consent to not opt Plaintiff out of receiving telephone communication from Job.com" and that they "represented to Job.com, recklessly and without regard to its truth or falsity, that Plaintiff consented to not opt out of receiving telephone communication [from Job.com]." Doc. 24, ¶ 22. And due to Job's reliance on TPDs' alleged misrepresentations, Job alleges it is now potentially liable to Plaintiff for TCPA violations.

Even assuming TPDs did, in fact, make a false statement,[3] Job does not allege TPDs <u>intended</u> to induce Job's reliance on the allegedly false statements. Job only alleges that TPDs made the statements "recklessly and without regard to its truth or falsity." Although Job allegedly "relied on the representations of [TPDs]," Job does not allege that was TPDs' intended result. Thus, the Court finds that Job has failed to state a claim for negligent misrepresentation.

### 2. Breach of contract.

TDPs assert that Job has failed to allege the existence of a contract between TDPs and Job.

---

[3] The Court is dubious that TPDs' alleged election to not opt-out Plaintiff from receiving telephone communications could constitute a false statement because TPDs used an apparently automated "computer program" and the opt-out capability requires "deselecting a checked box on the registration page." Doc. 24, ¶ 17. Likewise, the Court is dubious that TDPs' failure to opt out Plaintiff could have been intentional because TDPs used "a computer program" to register Plaintiff. However, Job's third party complaint alleges TDPs' conduct was reckless, not intentional.

TDPs argue that because Job alleges that TDPs served as Plaintiff's agent, the only contract that exists is between Job and Plaintiff, not TDPs. TDPs also assert that Job's "conclusory statement" that they were a party to a contract with Job is insufficient to allege the existence of a contract between the parties. Job argues that its allegations that TDPs "agreed to be bound by [the terms] as a condition of their use of Job.com" is sufficient.

The Court finds Job's third party complaint insufficiently alleges the formation of a contract between TDPs and Job. Job's allegation that TDPs "agreed to be bound by [the terms] as a condition of their use of Job.com" is "not a factual allegation sufficient to support the formation of a contract, but rather a conclusion of law 'couched as a factual allegation.'" *Be In, Inc. v. Google, Inc.*, No. 12-CV-3373-LHK, 2013 WL 5568706, at *9 (N.D. Cal. Oct. 9, 2013) (finding allegation that "Defendants agreed to [the Terms of Service] when they used and/or visited the CamUp website" to be insufficient to plead the formation of a contract). Job provides no facts beyond the existence of the terms to demonstrate that TDPs were put on notice that the use of Job.com would be interpreted as agreement to the terms. *See id.* Job states in wholly conclusory fashion that "[TDPs] were on notice of [the terms] and [TDPs] agreed to be bound by [the terms] as a condition of their use of Job.com," but provides no factual support for these allegations. The Court declines to find TDPs are bound by the terms in the absence of any facts indicating TDPs' assent to them. *See id.* ("Defendants' mere use of the website can only serve as a manifestation of assent where Defendants had, or should have had, reason to know that mere use would be so interpreted.") (citations omitted). Accordingly, Job's breach of contract claim fails.

### 3. Express Indemnity.

Job's fifth cause of action for express indemnity is premised on TDPs' alleged agreement to the terms, which provided that they would indemnify Job for any damages resulting from their breach of the terms. *See* Doc. 24, ¶ 38. Because the Court finds TDPs did not agree to the terms, Job's express indemnity claim fails.

### 4. Implied Indemnity, Equitable Indemnity, and Contribution.

Job's third cause of action is for implied indemnity and its fourth is for equitable indemnity. Job alleges that if it "is held liable for all or any part of the damages claimed by Plaintiff . . . Job is

entitled to indemnification by [TDPs] . . . on the theories of implied indemnity." Likewise, Job alleges that if it "is held liable for all or any part of the damages claimed by Plaintiff . . . Job is entitled to equitable indemnity on a comparative fault basis from [TDPs]."

Job's sixth and final cause of action is for contribution. Job alleges that if "Job.com is found liable for all or any part of the claims against it, [TDPs], to the their [*sic*] fault is determined by the Court, are obligated to reimburse and are liable to Job.com for all or any liabilities so assessed by way of contribution."

Job provides no facts whatsoever to support these legal conclusions. Without more, these conclusory statements are insufficient on their own for Job to state claims for relief on a theory of implied indemnity, equitable indemnity, or contribution. *See Iqbal*, 556 U.S. at 678-79; *Twombly*, 550 U.S. at 545 ("While a complaint . . . does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitations of the elements of a cause of action will not do.").

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS TDPs' motion for judgment on the pleadings by dismissing the complaint WITH LEAVE TO AMEND.[4] Counsel for Job are cautioned that this will be the last opportunity to amend. This Court does not have the resources to review and write extensive orders on how to write, rewrite, and submit pleadings. This order gives the proper direction for the last time.

**SO ORDERED**
**Dated: June 18, 2014**

                                  **/s/ Lawrence J. O'Neill**
                                  **United States District Judge**

---

[4] "[A]lthough Rule 12(c) does not mention leave to amend, courts have discretion both to grant a Rule 12(c) motion with leave to amend, *see Carmen v. San Francisco Unified Sch. Dist.*, 982 F. Supp. 1396, 1401 (N.D. Cal. 1997), and to simply grant dismissal of the action instead of entry of judgment. *See Moran v. Peralta Cmty. Coll. Dist.*, 825 F. Supp. 891, 893 (N.D. Cal. 1993)." *Lonberg v. City of Riverside*, 300 F. Supp. 2d 942, 945 (C.D. Cal. 2004).