# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PETER OLNEY, et al. | Case No. 1:12-cv-01724-LJO-SKO |
| Plaintiffs, | |
| v. | **ORDER ON CONFIDENTIAL DESIGNATION OF CD-ROM PRODUCED IN DISCOVERY** |
| JOB.COM, | |
| Defendant/Third Party Plaintiff, | (Docket No. 150) |
| v. | |
| RESUMEDIRECTOR.COM, et al. | |
| Third Party Defendants. | |

## I.   INTRODUCTION

On July 7, 2014, the parties filed a "Joint Statement re Discovery Disagreement." (Doc.152.) Plaintiff Peter Olney ("Plaintiff") seeks to "de-designate" a CD-ROM produced during discovery that Defendants Job.com, Inc. ("Job.com") and Windy City Call Center, LLC ("Windy City") (collectively "Defendants") designated as confidential pursuant to a stipulated entered into by the parties. The parties appeared for a hearing on this matter on July 30, 2014. They filed a "Joint Supplemental Statement re Discovery Disagreement" on August 5, 2014. (Doc. 167.) For the reasons set forth below, the CD-ROM at issue shall no longer be designated confidential

pursuant to the parties' confidentiality stipulation.

## II.   BACKGROUND

**A.   Factual Background[1]**

On August 12, 2012, Plaintiff registered his resume with a website called "Resume-Now" as part of his efforts to seek new employment. Resume-Now is owned and operated by LiveCareer, Inc. ("LiveCareer"). Registration with Resume-Now generally consists of three steps. First, the registrant is prompted to create or upload a new resume. Second, the registrant is asked for information regarding the job he or she seeks. Third, the registrant is asked to enter and confirm his or her email address. According to Job.com, at this point the registrant also (1) is given an opportunity to review Resume-Now's terms of use and privacy policy; (2) is asked to acknowledge that he or she has read and agrees to the terms of use and privacy policy; and (3) is allowed to uncheck a box that reads: "[R]eceive . . . free information on managing my career."

On August 13, 2012, Plaintiff used the Resume-Now's resume posting service, a service that is offered only to subscribing members. To initiate the resume posting service, Plaintiff clicked a button labeled: "Post Resume. Instantly post your resume to 90+ job boards." Plaintiff was then directed to the resume posting "splash page," where Plaintiff was given the option to choose from various categories of job-search websites on which he wished his resume to be posted. Plaintiff chose to post his resume on "General Sites." Upon choosing "General Sites," Plaintiff was directed to a pop-up page displaying a list of additional job sites where his resume would be sent. "Job.com" was one of the websites listed in the pop-up page.

As part of this process, Plaintiff was required to provide additional contact information. The website reads: "Enter your mailing address and current phone [number] so that recruiters and potential employers can contact you." Plaintiff entered his cell phone number on this page. Plaintiff was then given another chance to review Resume-Now's terms of use and privacy policy. Plaintiff reviewed the policy and completed the resume posting process by clicking "Post."

On August 17, 2012, Plaintiff registered an account with Job.com via Resume-Now's

---

[1] This factual background is taken from the District Court's summary of the facts as set forth in its May 1, 2014, order on Job.com's motion for summary judgment. (Doc. 122.)

website. The registration process consisted of populating fields on five pages, one of which was the "Profile" page. On the Profile page, Plaintiff's cell phone number was entered in the "Home Phone" field. Job.com asserts that Plaintiff also left a box unchecked that read "[B]y keeping the box above checked, I'd like to be contacted by phone to discuss educational opportunities to help prepare me for my dream career." Although the box was checked by default, a registrant may uncheck the box if he or she wishes to opt out of the service. Plaintiff claims that he never visited Job.com, never saw the opt-out box, and therefore could not have checked it or left it unchecked.

Job.com forwarded Plaintiff's profile, including his phone number, to a third party, Windy City Call Center, LLC ("Windy City"). Windy City operates the Windy City Call Center, which is used to provide "education leads" to higher learning institutions. Job.com, through Windy City, placed multiple calls a day to Plaintiff on August 17, 2012, through September 4, 2012, for the purpose of selling Job.com and Windy City's or a third party's services.

**B.     Procedural Background**

    **1.     Involved Parties and Pleadings**

Plaintiff filed this suit on October 19, 2012, on behalf of himself and all other similarly situated individuals. According to the currently operative Second Amended Complaint ("SAC"), Plaintiff seeks statutory damages and injunctive relief against Job.com and Windy City for negligent willful violations of the Telephone Consumer Protection Act ("TCPA") in making allegedly improper automatic telephone calls to Plaintiff's cellular telephone.

On March 22, 2013, Job.com filed a third-party complaint ("TP Complaint") against Resumedirector.com, North America Livecareer, Inc., and Livecareer, LTD ("TP Defendants"). (Doc. 24.)[2] The TP Defendants filed an answer to Job.com's complaint on May 21, 2013. (Doc. 33.) On November 15, 2013, Plaintiff filed a First Amended Complaint ("FAC"), which named Bird Dog Media, LLC, as a new defendant. (Doc. 76.) On December 6, 2013, the parties stipulated that Plaintiff be permitted to file a Second Amended Complaint ("SAC") naming Windy City as a defendant in place of Bird Dog Media, LLC. (Doc. 80.) The SAC was filed on December 10, 2014, naming Windy City as a defendant, and Plaintiff filed a notice of voluntary

---

[2] LiveCareer Ltd. owns and operates ResumeDirector.com. (Doc. 33, Answer to TP Complaint, ¶ 6.)

3

1  dismissal of Bird Dog Media, LLC, on December 19, 2013.  (Doc. 83.)

2  On February 18, 2014, Windy City filed an Answer to Plaintiff's SAC, and filed a Cross-Claim against Defendants LiveCareer, Ltd., North America Livecareer, Inc., and Resumedirector.com.  (Doc. 106.)  On March 10, 2014, Defendants LiveCareer, Ltd., North America Livecareer, Inc., and Resumedirector.com filed a motion to dismiss Windy City's Cross-Claim against them.  (Doc. 112.)  On April 1, 2014, Windy City filed a notice of voluntary dismissal of its Cross-Claim.  (Doc. 114.)

### 2. The Parties' Discovery Stipulation

After discovery commenced regarding Plaintiff's individual claims, the parties drafted a written stipulation that would limit or preclude the use of information marked "confidential" and produced during the course of discovery.  The parties filed their stipulation and requested the Court issue it as a protective order regarding confidential discovery documents.  On September 19, 2013, the Court denied without prejudice the parties' request because the stipulation failed to comply with the Court's Local Rule 141.1.  (Doc. 65.)  Rather than re-filing a revised stipulation, the parties elected to enter into a private confidentiality agreement between themselves on September 26, 2013, entitled "Stipulation of Confidentiality," which was intended to govern the use of confidential information produced during the course of discovery (the "Stipulation").  The Stipulation was executed by counsel for Plaintiffs, Job.com, and the TP Defendants.  Windy City did not sign the Stipulation until after December 10, 2013, when it was added to the lawsuit pursuant to the SAC. (Doc. 152-1, Kazerounian Decl., ¶ 7.)

The Stipulation permitted the parties to designate as "confidential" those "materials, or portions of materials being produced, disclosed, or otherwise submitted to the other party containing proprietary information or information that would invade their right to privacy including but not limited to the protection of sensitive personal or financial information, information constituting trade secrets, or such similar protected information needing confidential designation."  (Doc. 152-2, p. 2-3, ¶ 2.)  Materials produced during discovery, but designated confidential, were to be used solely for preparation, trial, and appeal of this case, and were not to be used by any person for any other purpose, including in any other litigation. (Doc. 152-2, p. 3, ¶

4.)

On September 3, 2013, in response to written discovery propounded by Plaintiff, Job.com served on Plaintiff three audio recordings on a CD that was marked "confidential" under the parties' Stipulation.  Although the parties' Stipulation was not executed until September 26, 2013, there is no dispute that the CD was produced and marked confidential pursuant to the Stipulation.

On October 4, 2013, Plaintiff was deposed and testified regarding a telephone conversation he had with someone who referenced Job.com:

> A [Plaintiff]: . . . So I picked up and I believe there was a pause, and then the operator came on and called me by name and started to explain something and I want to say – I said, where did you get my number from, I don't want your services, please don't call me back.
>
> Q: Did the person say why they were calling you?
>
> A: They were offering some form of educational assistance, which I was absolutely not interested in at the time.
>
> Q: Did the person say how they got your phone number?
>
> A: I want to say she referenced Job.com.
>
> Q: Okay.  Do you recall anything else about that conversation?
>
> A: No.  It was relatively brief, maybe a minute or two.  I was more or less trying to find out why they were calling.

(Doc. 167-3, p. 4, Olney Depo., 117:3-20.)

On December 5, 2013, Plaintiff filed another lawsuit in this Court:  *Olney v. Job.com*, 1:13-cv-2006-LJO-SKO ("*Olney II*").  In *Olney II*, Plaintiff alleged on behalf of himself and others similarly situated that Job.com and its related entities knowingly and willfully used recording equipment to record telephone conversations without Plaintiff's knowledge or consent in violation of California Penal Code §§ 630, *et seq.*

On February 24, 2014, Plaintiff filed a second amended complaint in *Olney II* against Job.com and added Windy City as a defendant for wrongfully recording telephone conversations with Plaintiff without his knowledge or consent.  Plaintiff alleges on one occasion around September 2012, Windy City contacted Plaintiff on his cellular telephone to inquire about

5

educational financing opportunities available to Plaintiff, during which time Windy City never informed Plaintiff by any means that the conversation was being recorded. (Doc. 91-, ¶ 15.) On March 13, 2014, Plaintiff voluntarily dismissed Job.com as a defendant in *Olney II.* (Doc. 16.)

On May 18, 2014, Windy City produced a CD containing three audio recordings which it marked "confidential" pursuant to the Stipulation in the current suit ("*Olney I*").[3]

A disagreement arose among the parties regarding whether, by filing *Olney II*, Plaintiff violated the parties' Stipulation pertaining to discovery produced and marked confidential in *Olney I*". Defendants Job.com and Windy City maintain Plaintiff's factual basis for filing *Olney II* was obtained through the confidential CD recordings produced by both Job.com and Windy City, and Plaintiff's use of that information in *Olney II* was an express violation of the parties' Stipulation.

The parties presented this issue as an informal discovery dispute in *Olney I*, but after review of the parties' informal letter briefs, the Court determined resolution of the issue was beyond the scope of an informal telephonic discovery conference. The Court ordered that, to the extent Plaintiff wished to challenge the confidentiality designation of information produced in discovery in *Olney I*, Plaintiff was to address the issue through a formal motion. (Doc. 144.)

On July 7, 2014, pursuant to Local Rule 251, the parties submitted a joint statement regarding their discovery dispute arising from the CD marked confidential. (Doc. 152.) A hearing on the parties' dispute was held on July 30, 2014, and the parties were ordered to provide an updated joint statement. (Doc. 163.) On August 5, 2014, the parties filed an updated joint statement regarding their discovery disagreement. (Doc. 167.)

## II.   DISCUSSION

**A.   The Parties' Positions**

    **1.   Plaintiff's Argument**

Plaintiff frames the main issue as a challenge to Defendants' "confidential" designation of the CD containing three recorded calls, a copy of which was produced by both Job.com and Windy City after discovery requests propounded by Plaintiff. Plaintiff contends the CD does not contain "sensitive personal or financial information, information constituting trade secrets, or such similar

---

[3] The CD at issue was produced by both Windy City and Job.com at separate times.

6

information needing confidential designation" as defined by the Stipulation. (*See* Doc. 152-2, Exhibit A, ¶ 2.)

Plaintiff also contends that Windy City and Job.com are hiding behind a confidentiality designation to shield disclosure of their allegedly illegal behavior in recording telephone conversations without knowledge and consent of the other party to the recorded call. According to Plaintiff, a blanket preclusion on Plaintiff's right to use the CD would shield Job.com and Windy City from Plaintiff's allegations of illegal activity in *Olney II*.

Finally, Plaintiff maintains that, even if the CD is deemed confidential pursuant to the Stipulation, neither Defendant is prejudiced by Plaintiff's filing of *Olney II*: Job.com was dismissed from *Olney II* on March 13, 2014, and Windy City signed the Stipulation <u>after</u> *Olney II* was filed and cannot enforce it with respect to Plaintiff's filing of *Olney II*.

### 2. Defendant Job.com's Argument

Job.com contends that, regardless whether the CD actually contains confidential information, the core issue is Plaintiff's breach of the parties' Stipulation by failing to provide notice to either Defendant of his intent to use and disclose information that was marked "confidential" under the Stipulation. Job.com argues that if Plaintiff believed the recording were improperly designated under the Stipulation, he was required to address that issue with Job.com and the Court before filing *Olney II* and disclosing the information. Job.com contends that "reward[ing]" Plaintiff for violating the agreement by de-designating the CD would undermine the integrity of the judicial process and undercut the parties' Stipulation.

### 3. Defendant Windy City's Argument

Windy City agrees that while "defendants may not shield evidence of a crime by hiding behind a private agreement," Plaintiff should not be able to disregard the parties' Stipulation and later seek to legitimize his breach of the Stipulation by seeking to de-designate the CD after disclosure of the information was made. Windy City contends phone recordings of this nature are confidential because they typically contain scripts and implicate caller lists, which is proprietary information. Windy City argues that if this recording is not deemed confidential it will implicate the confidentiality of all recordings of this nature produced future in class discovery, and would

7

set a "precedent for all recordings [of] other potential class members."  In other words, by de-designating this CD, it may require the parties to undertake a separate analysis of each putative class-members call recordings that Windy City produces in discovery.  Windy City maintains that Plaintiff's only motivation for de-designating this CD is to proceed with *Olney II*.  The parties specifically agreed that "confidential" discovery materials would not be used in any other litigation.  Plaintiff should not be permitted to undercut the Stipulation by de-designating the CD.

**B.     The Parties' Stipulation is Enforceable Pursuant to Rule 29**

The parties' Stipulation is enforceable, despite that it was not issued or approved by court order.  Pursuant to Rule 29 of the Federal Rules of Civil Procedure, the parties may stipulate to procedures governing or limiting discovery so long as such a stipulation does not alter a discovery deadline set by the Court or interfere with the time set for completing discovery, for hearing a motion, or for trial.  Fed. R. Civ. P. 29.  The Ninth Circuit has recognized such private written stipulations as binding and enforceable by the court.  *CDN Inc. v. Kapes*, 197 F.3d 1256, (9th Cir. 1999) ("Because stipulations serve both judicial economy and the convenience of the parities, courts will enforce them absent indications of involuntary or uninformed consent.").  Here, the parties' Stipulation governs discovery materials designated by the parties as confidential, it is written and signed by counsel for the parties, and it does not alter any case deadlines.  The Stipulation is enforceable under Rule 29.

**C.     The CD Recordings Contain No Confidential Information**

The Stipulation provides that the parties may designate any material they produce in discovery as "confidential," including electronic information contained on CD-ROM.  The parties defined confidential material as "containing proprietary information or information that would invade their right to privacy including but not limited to the protection of sensitive personal or financial information, information constituting trade secrets, or such similar protected information needing confidential designation."  (Doc. 152-2, Confidentiality Agreement, ¶ 2.)

The parties' further agreed that

> All Confidential Information revealed in this lawsuit shall be used solely for the preparation, trial, and appeal of this case, and shall not be used by any person

8

(except by the producing party) for any other purpose, including, but not limited to, any business or competitive purpose or in any other litigation, and shall not be used or disclosed in this action except as provided for in this agreement, or other court process, or Court order . . . .

(Doc. 152-2, Confidentiality Agreement, ¶ 4.)

Paragraph 5 of the parties Confidentiality Agreement provides as follows:

The parties stipulate if counsel for either party determines that the prosecution or defense of this action requires that Confidential Information be disclosed to persons not otherwise authorized by this agreement, counsel shall provide written notice via facsimile to opposing counsel of the intended disclosure (which notice shall specify with particularity the information to be disclosed and the name, title and employer of the otherwise unauthorized person) not less than seven court days prior to disclosure, or such shorter period as is agreeable to counsel.  If, within four court days of receipt of such notice, counsel objects to such disclosure in a writing sent via facsimile to opposing counsel, the Confidential Information shall not be disclosed and Counsel is allowed seven court days to file a protective order with the court until and unless the Court so orders one.

(Doc. 152-2, Confidentiality Agreement, ¶ 5.)

Plaintiff contends none of the contents of the CD recordings is "confidential."  This argument has merit.  While the CD contains three audio files, only one has audible content.  The CD recording does not contain "sensitive personal or financial information, information constituting trade secrets, or such similar protected information needing confidential designation," as defined by the parties' Stipulation.  It contains no scripted content and divulges no customer list, each of which are routinely deemed by courts to constitute a trade secret and/or proprietary information. *See, e.g., MAI Syst. Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 521 (9th Cir. 1993) (customer database qualified as trade secret because it had potential economic value to allow a competitor to direct its sales efforts to potential customers).  While recordings of this type may generally be presumed to contain confidential content, this *particular* CD does not contain any "Confidential Information" as defined by the parties' Stipulation.

The fact that a call occurred is also not confidential information – the entire crux of this litigation is that Plaintiff received calls from Job.com and/or Windy City to which he had not consented.  Defendants also have been unable to articulate how *the fact the call was recorded* in and of itself is confidential.

Despite that call recordings of this nature may contain confidential information and would generally be entitled to a "confidential" designation under the Stipulation, the content of *this* telephone recording contains no confidential information. As such, it is not entitled to a "confidential" designation.[4]

**D.      Plaintiff's Filing of *Olney II* Did Not Constitute Use of Confidential Information**

Defendants argue that regardless of whether the CD contains confidential information, Plaintiff nonetheless breached the Stipulation by failing to furnish Defendants with the required prior notice of his intended use of the CD or seek judicial intervention to de-designate the CD prior to use.

Plaintiff argues the allegations of his complaint in *Olney II* do not constitute *use* of any information contained on the CD, and therefore no prior notice or de-designation of the CD was necessary prior to filing *Olney II*. Defendants note *Olney II* is predicated on Plaintiff's allegation that he was not informed he was being recorded during the call, and assert this allegation could only have been made through use of the contents of the CD. (*Olney II*, 1:13-cv-2000-LJO-SKO, SAC, ¶ 15.) Defendants maintain Plaintiff's allegation in *Olney II*, therefore, necessarily constituted *use* of information marked confidential, which was prohibited under the Stipulation.

At the hearing on this matter, the parties disputed whether Plaintiff had any independent recollection of the recorded call and whether he would have been able to assert the allegations in *Olney II* without resort to the content of the CD marked confidential in *Olney I*. The parties requested, and were permitted, additional time to review Plaintiff's deposition testimony and to provide a supplement joint discovery statement regarding this issue.

In the supplemental joint discovery statement, Plaintiff contends his deposition testimony establishes he had a good recollection of the recorded call at issue. His personal knowledge, and not the contents the CD recording, was thus utilized for purposes of alleging in *Olney II* that he was not informed that the call was being recorded. Defendants respond that Plaintiff's memory of the recorded call is extremely limited, evidenced by the fact that he believes he received the call,

---

[4] Nothing in this order precludes Windy City from marking "confidential" other call recordings of this nature. Moreover, to the extent Windy City wishes to have additional protections in place regarding use of recorded-call information, it may submit a request for a protective order.

10

when in fact he placed the call.  Moreover, Plaintiff stated in his deposition that he did not recall anything more about the call, and he did not state he was never informed during the course of the call that it was being recorded.

Plaintiff's deposition testimony indicates he has independent recollection of the phone call: Plaintiff recited the approximately length of the call, the subject matter of the conversation, and that a woman identified herself as being associated with Job.com.  (*See* Doc. 167-1, 167-3. Defendants argue Plaintiff does not believe he initiated the call, but the recorded conversation was placed by Plaintiff.  While Plaintiff may not have accurately remembered whether he placed the call or received it, the deposition testimony reflects that Plaintiff has an independent recollection of the contents of the call.  It is within the scope of his personal knowledge to allege whether he was told during the call that the call was being recorded.  The only information produced in discovery in *Olney I* that Plaintiff necessarily relied upon in *Olney II* was the fact that his conversation was recorded.  Based on the terms of the Stipulation and Defendants' arguments to the Court, it is the *content* of the CD recording that Defendants intended remain confidential, not the fact the call was recorded.  Thus, Plaintiff's allegations in *Olney II* do not constitute *use* of discovery material marked confidential in *Olney I*.

Finally, Paragraph 4 of the parties' Stipulation placed an absolute ban on use in other litigation of any information marked confidential in *Olney I*.  There is no notice process or judicial intervention steps articulated in Paragraph 5 of the Stipulation regarding use of confidential information *outside* the defense or prosecution of *Olney I*.  Rather, the stipulation contains an outright ban on any use in other litigation of any discovery material marked confidential.  Because the Stipulation essentially precludes a party from filing a separate lawsuit based on allegedly wrongful behavior evidenced by discovery marked "confidential," it is unclear whether such a provision would be enforceable as a matter of public policy, even had Plaintiff breached the Stipulation by using confidential discovery material to file *Olney II*.  *See McGrane v. The Reader's Digest Association, Inc.*, 822 F. Supp. 1044, 1052 (S.D.N.Y. 1993).

///

///

**E.    The CD Call Recording Shall No Longer Be Designated "Confidential"**

The Court finds the call recordings at issue contain no confidential information and thus should not be designated "confidential" pursuant to the parties' Stipulation. Even assuming the contents of the call recordings were confidential, Plaintiff's allegations in *Olney II* did not constitute use of such information. Moreover, even assuming that the recordings were confidential and Plaintiff's allegations in *Olney II* constituted use of confidential information, it is unlikely that the Stipulation's broad limitation on use in other litigation could be enforced pursuant to public policy. Finally, notwithstanding any obligation by Plaintiff to supply advance notice to Defendants of his intent to disclose information marked "confidential, any breach of the Stipulation would be harmless in light of the Court's finding that the information on the CD at issue was not entitled to a confidential designation under the parties' Stipulation.

### III.    CONCLUSION AND ORDER

Accordingly, IT IS HEREBY ORDERED that Plaintiff's request to de-designate as "confidential" the CD at issue is GRANTED.

IT IS SO ORDERED.

Dated:    **September 15, 2014**              **/s/ Sheila K. Oberto**
                                                               UNITED STATES MAGISTRATE JUDGE