# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **PETER OLNEY,**<br><br>          **Plaintiff,**<br><br>     v.<br><br>**JOB.COM, INC., et al.,**<br><br>          **Defendants.** | **Case No. 1:12-cv-01724-LJO-SKO**<br><br>**MEMORANDUM DECISION AND ORDER RE THIRD-PARTY DEFENDANTS' MOTION TO DISMISS (Doc. 161)** |

Third-party Defendants ResumeDirector.com, North America LiveCareer, Inc., and LiveCareer, Ltd. (collectively, "TPDs") move to dismiss Defendant Job.com's ("Job") amended third-party complaint (Docs. 154-56[1]) ("the amended complaint" or "Am. Compl."). Doc. 133. For the reasons discussed below, the Court GRANTS TPDs' motion.

## I.    BACKGROUND

### A.    Factual Background

This case concerns alleged violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq*. Specifically, Plaintiff Peter Olney claims that Defendants are liable under TCPA for their involvement in improper automated telephone calls to his cell phone. The facts are as follows.[2]

#### 1.    Plaintiff Registers With Resume-Now.

---

[1] Job inexplicably filed its complaint three times. *See* Docs. 154-56. For the sake of clarity, the Court will refer only to the complaint filed as Doc. 156.

[2] The facts are undisputed unless otherwise indicated.

1

On August 12, 2012, Plaintiff registered his resume with a website called "Resume-Now" as part of his efforts to seek new employment. Resume-Now is owned and operated by LiveCareer, Inc. ("LiveCareer"). Registration with Resume-Now generally consists of three steps. First, the registrant is prompted to create or upload a new resume. Second, the registrant is asked for information regarding the job he or she seeks. Third, the registrant is asked to enter and confirm his or her email address. According to Job.com, at this point the registrant also (1) is given an opportunity to review Resume-Now's terms of use and privacy policy ("the terms"); (2) is asked to acknowledge that he or she has read and agrees to the terms of use and privacy policy; and (3) is allowed to uncheck a box that reads: "[R]eceive . . . free information on managing my career."

On August 13, 2012, Plaintiff used the Resume-Now's resume posting service, a service that is offered only to subscribing members. To initiate the resume posting service, Plaintiff clicked a button labeled: "Post Resume. Instantly post your resume to 90+ job boards." Plaintiff was then directed to the resume posting splash page, where Plaintiff was given the option to choose from various categories of job search websites that he wished his resume to be posted. Plaintiff chose to post his resume on "General Sites." Upon choosing "General Sites," Plaintiff was directed to a pop-up page displaying a list of additional job sites where his resume would be sent. "Job.com" was one of the websites listed in the pop-up page.

As part of this process, Plaintiff was required to provide additional contact information. The website read: "Enter your mailing address and current phone [number] so that recruiters and potential employers can contact you." Plaintiff entered his cell phone number on this page. Plaintiff was then given another chance to review Resume-Now's terms of use and privacy policy. Plaintiff reviewed the policy and completed the resume posting process by clicking "Post."

    **2.  Plaintiff Registers With Job.com.**

On August 17, 2012, Plaintiff registered an account with Job.com via Resume-Now's website.

The registration process consisted of populating fields on five pages, one of which was the "Profile" page. On the Profile page, Plaintiff's cell phone number was entered in the "Home Phone" field. Defendant asserts that Plaintiff also left a box unchecked that read: "[B]y keeping the box above checked, I'd like to be contacted by phone to discuss educational opportunities to help prepare me for my dream career." Although the box was checked by default, a registrant may uncheck the box if they wish to opt out of the service. This is referred to as "the opt-out box." Plaintiff claims that he never visited Job.com, never saw the opt-out box, and therefore could not have checked it nor left it unchecked.

### 3. Windy City Calls Plaintiff Regarding Educational Programs.

Job.com forwarded Plaintiff's profile, including his phone number, to a third party, Windy City Call Center, LLC ("Windy City"). Windy City operates the Windy City Call Center, which is used to provide "education leads" to higher learning institutions. Job.com ("Job"), through Windy City, placed multiple calls a day to Plaintiff's cell phone between August 17, 2012 and September 4, 2012, for the purpose of selling Defendants' or a third party's services.

### B. Relevant Procedural History

Plaintiff initiated this action on October 19, 2012 on behalf of himself and all other similarly situated individuals.[3] According to Plaintiff's second amended complaint (the "SAC") (Doc. 82), Plaintiff seeks statutory damages and injunctive relief against Job.com for negligent and willful violations of the TCPA. SAC at ¶ 1.

On March 22, 2013, Job filed its third-party complaint against TPDs. Doc. 24. Job.com asserted six causes of action against TPDs for (1) negligent misrepresentation; (2) breach of contract; (3) implied indemnity; (4) equitable indemnity; (5) express indemnity; and (6) contribution. *Id.* at 4-9.

On March 3, 2014, Job filed a motion for summary judgment. Doc. 110. The Court denied the

---

[3] On January 13, 2014, Plaintiff withdrew his motion for class certification. (Doc. 91.)

motion on May 1, 2014. Doc. 122.

On May 23, 2014, TPDs filed a motion for judgment on the pleadings. Doc. 133. The Court granted the motion on June 19, 2014. Doc. 146. The Court, however, granted Job one "last opportunity to amend" its complaint against TPDs. Doc. 146 at 8.

On July 9, 2014, Job timely filed its amended complaint against TPDs. Doc. 156. Job asserts seven causes of action for: (1) breach of contract; (2) negligent misrepresentation; (3) negligence; (4) express indemnity; (5) equitable indemnity; (6) implied indemnity; and (7) contribution. *Id.* at 4-9.

Currently pending before the Court is TPDs' motion to dismiss Job's entire amended complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. The Court has reviewed the papers and has determined that the matter is suitable for decision without oral argument pursuant to Local Rule 230(g). For the reasons discussed below, the Court GRANTS TPDs' motion to dismiss.

## II. LEGAL STANDARD

A motion to dismiss pursuant to Fed R. Civ. P. 12(b)(6) is a challenge to the sufficiency of the allegations set forth in the complaint. A 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990). In considering a motion to dismiss for failure to state a claim, the court generally accepts as true the allegations in the complaint, construes the pleading in the light most favorable to the party opposing the motion, and resolves all doubts in the pleader's favor. *Lazy Y. Ranch LTD v. Behrens,* 546 F.3d 580, 588 (9th Cir. 2008).

To survive a 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks

4

for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility for entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). Thus, "bare assertions . . . amount[ing] to nothing more than a 'formulaic recitation of the elements' . . . are not entitled to be assumed true." *Iqbal*, 556 U.S. at 681. In practice, "a complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562. To the extent that the pleadings can be cured by the allegation of additional facts, the plaintiff should be afforded leave to amend. *Cook, Perkiss and Liehe, Inc. v. Northern California Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990) (citations omitted).

### III. DISCUSSION

**1. Breach of contract.**

Job's first cause of action is for breach of contract. Am. Compl. at 4. TPDs assert that Job has failed to allege the existence of a contract between TPDs and Job. TPDs argue that because Job alleges that TPDs served as Plaintiff's agents, the only contract that exists is between Job and Plaintiff, not between Job and TPDs. TPDs also assert that Job's allegations are insufficient to allege the existence of a contract between the parties in spite of any agency relationship between Plaintiff and TPDs.

**a. Whether TPDs Were Plaintiff's Agents.**

5

TPDs claim that Job made a contract with Plaintiff only when Plaintiff registered on Job's website via TPDs' services because TPDs acted as Plaintiff's agents. Job does not dispute that TPDs acted as Plaintiff's agents. Job argues, however, that Plaintiff was an undisclosed principal and, therefore, TPDs are a party to any contract between Plaintiff and Job.

Job's allegations in its amended complaint belie this contention. Job alleges that "TPDs, either individually or as the actual or ostensible agents of Plaintiff, registered Plaintiff on several job websites." Am. Compl. at ¶ 13; *see also id.* at ¶ 12. "As part of that registration process, [TPDs] provided . . . Plaintiff's personal information including, but not limited to, Plaintiff's resume and cellular telephone number." *Id.*; *see also id.* at ¶ 16. "[TPDs] identified Plaintiff's cellular telephone number as Plaintiff's 'home phone' during the registration process." *Id.* at ¶ 16.

These allegations make clear that TPDs disclosed Plaintiff's identity to Job when registering him on Job's website by providing Job with Plaintiff's resume and personal information while doing so. Thus, according to the amended complaint, Plaintiff was a disclosed principal and TPDs acted as his agents.

Job's allegation that TPDs were Plaintiff's agents is fatal to its breach of contract claim. Long-standing California law establishes the following applicable principles:

> In general, under California law, an agent acting on behalf of a disclosed principal cannot be held personally liable on the contract. *See Lippert v. Bailey*, 241 Cal.App.2d 376, 382–83 (1966). A principal is considered "disclosed" "when the third party has notice that an agent is acting for a principal and has notice of the principal's identity." Restatement of Agency 3d § 6.01 cmt(a) (2006). Thus, an "agent will not be liable in an action based on contract brought by a third person where both the fact of agency and the name of the principal are disclosed." *Bayuk v. Edson*, 236 Cal. App. 2d 309, 319 (1965) (citing *Automatic Poultry Feeder Co. v. Wedel*, 213 Cal. App. 2d 509, 518 (1963); *Hayman v. Shoemake*, 203 Cal.App.2d 140, 159 (1962)); *accord Coughlin v. Blair*, 41 Cal. 2d 587, 594(1953).

*F.D.I.C. v. Frankel*, No. 11-CV-3279-LHK, 2011 WL 5975262, at *5 (N.D. Cal. Nov. 29, 2011). Job's allegations in its amended complaint make clear that Job asserts that TPDs acted as an agent for Plaintiff, their disclosed principal. *Id.*; Am. Compl. at ¶¶ 12, 25.

6

Because both the agency relationship between Plaintiff and TPDs and the identity of the principal (Plaintiff) were disclosed, TPDs cannot be contractually liable to Job, as any contract was made between Job and Plaintiff, not between Job and TPDs. *Frankel*, 2011 WL 5975262, at *5.

**b. Whether TPDs Assented to Job.com's Terms and Conditions.**

Regardless of whether an agency relationship between TPDs and Plaintiff precludes the existence of any contract between Job and TPDs, Job's amended complaint nonetheless fails to state facts demonstrating that TPDs assented to the Terms and Conditions ("the terms"). Job's allegation that TPDs "agree[d] to be bound by [the terms] as a condition of their use of Job.com," Am. Compl. at 23, is "not a factual allegation sufficient to support the formation of a contract, but rather a conclusion of law 'couched as a factual allegation.'" *Be In, Inc. v. Google, Inc.*, No. 12-CV-3373-LHK, 2013 WL 5568706, at *9 (N.D. Cal. Oct. 9, 2013) (finding allegation that "Defendants agreed to [the Terms of Service] when they used and/or visited the CamUp website" to be insufficient to plead the formation of a contract). Job provides no facts beyond the existence of hyperlink to the terms on Job's website to demonstrate that TPDs were put on notice that the use of the website alone would be interpreted as agreement to the terms. *See id.* Job does not, for instance, "allege the size or typeface of the link [to the terms], the perhaps central or obvious location of the link on the page, or even the text of the link, but merely alleges the existence of such a link." *Id.* Rather, Job merely alleges in wholly conclusory fashion that "[TPDs] were aware their use of Job.com's website was governed by Job.com's [terms] and that by using Job.com's website and registering Plaintiff on that website, they were agreeing to be bound by [the terms]," Am. Compl. at ¶ 22, but provides no factual support for these allegations.

That TPDs are allegedly sophisticated Internet users is not dispositive, as Job suggests. A recently decided Ninth Circuit case, *Nguyen v. Barnes & Noble, Inc.*, No. 12-56628, 2014 WL

7

4056549, __ F.3d __ (9th Cir. Aug. 18, 2014), is instructive.[4]

In *Nguyen*, the plaintiff challenged the defendant's assertion that he had agreed to the terms of use on the defendant's website. *Id.* at *1. Like Job's website, the defendant's website contained a "browsewrap" agreement, where its terms of use were available via a hyperlink located at the bottom left-hand corner of every page of the defendant's website. *Id.* at *2. The plaintiff asserted that he did not agree to the terms of use because he never clicked the hyperlink nor read them. *Id.* at *2. The defendant, however, claimed that the plaintiff had constructive notice of terms of use because of the hyperlink to them and the plaintiff's familiarity with websites with similar browsewrap agreements, including his own personal website. The defendant further argued that the plaintiff had agreed to the terms by virtue of his use of the website. *Id.* at *2.

The court held that where "there is no evidence that the website user had actual knowledge of the agreement, the validity of the browsewrap agreement turns on whether the website puts a reasonably prudent user on inquiry notice of the terms of the contract." *Id.* at *4 (citations omitted). The court went on to hold that

> where a website makes its terms of use available via a conspicuous hyperlink on every page of the website but otherwise provides no notice to users nor prompts them to take any affirmative action to demonstrate assent, even close proximity of the hyperlink to relevant buttons users must click on—without more—is insufficient to give rise to constructive notice. While failure to read a contract before agreeing to its terms does not relieve a party of its obligations under the contract . . . the onus must be on website owners to put users on notice of the terms to which they wish to bind consumers. Given the breadth of the range of technological savvy of online purchasers, consumers cannot be expected to ferret out hyperlinks to terms and conditions to which they have no reason to suspect they will be bound.

*Id.* at *6. The court further held that the plaintiff's familiarity with other website's browsewrap agreements—including that of his own personal website—was "of no moment." *Id.* The court held the

---

[4] The Court notes that the Ninth Circuit applied New York law in *Nguyen*. *See* 2014 WL 4056549, at *3. The court found, however, that whether New York or California law applied was not relevant because both "dictate the same outcome." *Id.*; *see also Nguyen v. Barnes & Noble, Inc.*, No. 8:12-cv-0812-JST (RNBx), 2012 WL 3711081, at *3 n.3 (C.D. Cal. Aug. 28, 2012) (finding that there "is no fundamental conflict between New York law and California law" as to whether the plaintiff had assented to the defendant's website's terms of use).

plaintiff's familiar with other websites "ha[d] no bearing on whether he had constructive notice of [the defendant's] Terms of Use." *Id.*

The Court cannot find that TPDs are bound by the terms in the absence of any facts indicating TPDs' assent to them. *See id.*; *see also Be In*, 2013 WL 5568706, at *9 ("Defendants' mere use of the website can only serve as a manifestation of assent where Defendants had, or should have had, reason to know that mere use would be so interpreted.") (citations omitted). Contrary to Job's assertion, TPDs' alleged sophisticated and personal knowledge of browsewrap agreements on websites, including their own, is "of no moment." *Nguyen*, 2014 WL 4056549, at *6. Without more, Job's allegation that its website contained a hyperlink to the terms is insufficient to demonstrate that TPDs were put on notice of the term's existence or that TPDs assented to them by virtue of their use of the website alone. *See id.*

Even in the absence of any agency relationship between Plaintiff and TPDs, Job's breach of contract claim fails for the additional reason that Job has failed to allege facts that would support a finding that TPDs agreed to the terms. Accordingly, the Court GRANTS WITHOUT LEAVE TO AMEND TPDs' motion to dismiss Job's claim for breach of contract.

**2. Negligent misrepresentation.**

To state a claim for negligent misrepresentation, Job must prove the following: "misrepresentation of a past or existing material fact, without reasonable ground for believing it to be true, and with intent to induce another's reliance on the fact misrepresented; ignorance of the truth and justifiable reliance on the misrepresentation by the party to whom it was directed; and resulting damage." *Shamsian v. Atlantic Richfield Co.*, 107 Cal. App. 4th 967, 983 (2003).

Job alleges that, among other things, TPDs "represented to Job.com, recklessly and without regard to its truth or falsity, that Plaintiff consent to not opt out from receiving telephone communication [from Job.com]." Am. Compl. at ¶ 29. Thus, the alleged representation underlying

9

Job's claim is TPDs' allegedly leaving the pre-checked opt out box checked. TPDs argue that this cannot constitute an actual representation, and, therefore, Job's negligent misrepresentation claim fails. Doc. 161-1 at 11-12.

"Negligent misrepresentation is narrower than fraud . . . [and] requires a false statement." *Id.* at 984. Accordingly, to state a claim for negligent misrepresentation, "a positive assertion is required; an omission or an implied assertion or representation is not sufficient." *Apollo Capital Fund, LLC v. Roth Capital Partners, LLC*, 158 Cal. App. 4th 226, 243 (2007).

Job argues that TPDs' intentionally opting to leave checked the pre-checked opt-out box constitutes a misrepresentation. Doc. 176 at 7-8. Although Job provides no authority that supports its position, the Court acknowledges that this case presents unique facts. Further, neither party has presented any applicable authority that clearly resolves the issue, and the Court is unaware of any. Nonetheless, the Court cannot find that TPDs' alleged failure to uncheck the pre-selected opt-out box—whether intentional or not—constitutes an affirmative representation. Even assuming TPDs intentionally left the opt-out box unchecked, that by its very nature is not a positive assertion; it is more akin to an omission or an implied assertion, neither of which is sufficient. *See Apollo Capital Fund*, 158 Cal. App. 4th at 243. Accordingly, the Court GRANTS WITHOUT LEAVE TO AMEND TPDs' motion to dismiss Job's claim for negligent misrepresentation.

### 3. Negligence.

Job brings a cause of action for negligence against TPDs that was not alleged in its original third-party complaint. TPDs argue that Job has not and, as a matter of law, cannot plead facts demonstrating that TPDs owed any legal duty to Job. Job argues that it has pled facts that support "the existence of a special relationship" between Job and TPDs such that TPDs owed a legal duty to Job "to use reasonable care in accessing and using Job.com's website and complying with [the terms]." Doc. 176 at 9. In support, Job relies on *J'Aire Corp. v. Gregory*, 24 Cal. 3d 799 (1979).

"[E]conomic damages, standing alone, can be recovered under some circumstances in an action for negligence . . . [where] the parties have a 'special relationship.'" *Ott v. Alfa-Laval Agri, Inc.*, 31 Cal. App. 4th 1439, 1448 (1995). "That special relationship must give rise to a duty on the part of the defendant to use due care to avoid economic injury to the plaintiff." *Id.* (citing *J'Aire*, 23 Cal. 3d at 804). "[A] critical foundational requirement for finding a special relationship is whether the third-party transaction was intended to affect the plaintiff in a particular way." *Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F. Supp. 2d 1048, 1054 (N.D. Cal. 2004) (citing *id.* at 1455-56).

Thus, in relevant part, *J'Aire* stands for the proposition that "[w]here a special relationship exists between the parties, a plaintiff may recover for loss of expected economic advantage through the *negligent performance of a contract*." *Id.* at 804 (emphasis added). Furthermore, as this Court has explained, "[u]nder a lost economic advantage claim the plaintiff must allege a loss of prospective economic advantage as his/her injury." *Black & Veatch Corp. v. Modesto Irrigation Dist.*, 827 F. Supp. 2d 1130, 1141 (E.D. Cal. Oct. 28, 2011).

Job's amended complaint provides no facts that demonstrate that the transaction between Plaintiff and TPDs was intended to affect Job in any particular way. The undisputed purpose of the agreement between Plaintiff and TPDs was to assist Plaintiff in finding new employment. Job also has failed to provide any facts that suggest that TPDs negligently performed their contractual duties owed to Plaintiff.

Finally, Job fails to allege facts that demonstrate that it lost any recognized prospective economic advantage. The thrust of Job's negligence cause of action is that TPDs' conduct exposed Job to legal liability, which, in turn, caused it to incur legal costs and harm to its "reputation and good will." Am. Compl. at ¶ 34. Job provides no authority for the proposition that such costs and expenses and general reputational harm could constitute a loss of prospective economic advantage that would support a negligence cause of action here. To recover in tort in the absence of contractual privity,

courts generally require that the defendant's negligent performance of a contract with a third-party cause the plaintiff to lose an economic benefit from that third-party. *See J'Aire*, 24 Cal. 3d at 808.

Accordingly, the Court GRANTS WITHOUT LEAVE TO AMEND TPDs' motion to dismiss Job's negligence cause of action because amendment appears futile.

### 4. Express Indemnity.

Job's fourth cause of action for express indemnity is premised on TPDs' alleged agreement to the terms, which provided that they would indemnify Job for any damages resulting from their breach of the terms. *See* Am. Compl. at ¶¶ 36-38. The claim is thus contingent on Job's breach of contract claim. *See id.* Because the Court finds Job's breach of contract claim fails as a matter of law, Job's express indemnity claim necessarily fails. Accordingly, the Court GRANTS WITHOUT LEAVE TO AMEND TPDs' motion to dismiss Job's express indemnity cause of action.

### 5. Implied Indemnity, Equitable Indemnity, and Contribution.

Job's fifth cause of action is for equitable indemnity, its sixth is for implied indemnity, and its seventh and final is for contribution. The Court previously dismissed all three claims for failure to state a claim, finding that they were comprised of insufficient conclusory statements without adequate factual support. *See* Doc. 146 at 8.

Job's amended complaint fares no better. The amended complaint adds nothing more than one or two additional conclusory statements to each claim. All three claims contain the additional allegation: "[TPDs] owed a duty to Job.com to provide Job.com with accurate information regarding its clients." Am. Compl. at ¶¶ 41, 44, 48. As noted above, this allegation is a questionable legal conclusion. Job's fifth and seventh causes of action contain the additional allegation: ". . . as any liability would be wholly derivative of the actions of Third Party Defnedants in registering Plaintiff on Job.com's website." *Id.* at ¶¶ 42, 48. Again, this allegation is a legal conclusion. All three claims continue to fail to state a claim for relief.

Accordingly, the Court GRANTS WITHOUT LEAVE TO AMEND TPDs' motion to dismiss Job's fifth, sixth, and seventh causes of action because amendment appears futile.

### IV. CONCLUSION

For the foregoing reasons, the Court GRANTS TPDs' motion to dismiss (Doc. 161). The Court GRANTS WITHOUT LEAVE TO AMEND TPDs' motion to dismiss Job's entire amended complaint.

IT IS SO ORDERED.

Dated:   **September 16, 2014**          /s/ Lawrence J. O'Neill
                                         UNITED STATES DISTRICT JUDGE